**Robert HENDERSON and Thomas Jefferson, Plaintiffs–Appellants,**

v.

**Richard DeROBERTIS, Warden; and Michael O'Leary, Assistant Warden, Defendants–Appellees.**

**Willie WILLIAMS; and Warren Lee Harris, Individually and on Behalf of all Others Similarly Situated, Plaintiffs–Appellants,**

v.

**Richard DeROBERTIS and Michael O'Leary, Defendants–Appellees.**

Nos. 88–2698, 88–3407 and 88–3430.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1990.

Decided Aug. 15, 1991.

Rehearing and Rehearing En Banc Denied Nov. 1, 1991.

Michael B. Brohman, Gregory S. Gallopoulos (argued), Jenner & Block, Chicago, Ill., for plaintiffs-appellants.

William H. London (argued), Laurel Black, William H. London, Beverly J. Tiesenga, Asst. Attys. Gen., Office of the Atty. Gen., Chicago, Ill., for defendants-appellees.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

During a four-day period in 1982, the outdoor temperature at Illinois' Stateville Correctional Center plunged to a low of 22 degrees below zero; the prison's heating system in Cellhouse B–West malfunctioned at the same time. Two of some 300 inmates housed in B–West, Thomas Jefferson and Robert Henderson, filed separate complaints under 42 U.S.C. § 1983 alleging that prison officials violated their eighth amendment rights by subjecting them to freezing temperatures which constituted unusual punishment. In a consolidated trial a jury apparently agreed that because of the deliberate indifference of prison offi-

cials, Jefferson and Henderson received neither adequate protection nor relief from the freezing conditions in their cells. The jury awarded each plaintiff $3,000.00 in compensatory and $2,000.00 in punitive damages. Defendants filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. The district judge entered judgment in favor of defendants notwithstanding the verdict because he found that qualified immunity protected the officials from liability. The motion for a new trial was not considered.

Soon after the jury returned their verdicts, two other inmates of B–West, Warren Lee Harris and Willie Williams, filed separate § 1983 complaints based upon the same factual circumstances. Harris also sought to certify as a class the prisoners confined in Cellhouse B–West during the four-day period. The district judge to whom the Harris and Williams cases were assigned, put these cases on hold until a decision was rendered on the defendants' post-trial motions for judgment notwithstanding the verdict in the Henderson and Jefferson cases. After the judgment notwithstanding the verdict was granted in favor of the prison officials, class certification was granted to Harris. The Harris and Williams cases then were dismissed with prejudice on the basis of the qualified immunity decision rendered in the Henderson and Jefferson cases.

All four cases have been consolidated in this appeal. Because we find that the prison officials were not entitled to the protection of qualified immunity, we reverse the district court's judgment notwithstanding the verdict, reinstate the jury's verdicts in favor of Henderson and Jefferson, and vacate the dismissal of the complaints of Harris and Williams and remand those cases for further proceedings.

The outcome of this appeal is based on the judgment notwithstanding the verdict entered in favor of Jefferson and Henderson,[1] and our review of that decision is *de novo*. *David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency Inc.*, 897 F.2d 288, 291 (7th Cir. 1990); *Webb v. City of Chester*, 813 F.2d 824, 827 (7th Cir.1987).

A judgment notwithstanding the verdict, granted in favor of a defendant, "is proper only if reasonable people, viewing the facts most favorably to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude that the plaintiff has made out a prima facie case." *Rakovich v. Wade*, 850 F.2d 1180, 1188 (7th Cir.) (citing *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982) ), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). We must view all the evidence and inferences in the light most favorable to Henderson and Jefferson, who prevailed with the jury; any conflicts in the evidence must be resolved in favor of those inmates and every permissible inference must be drawn in their favor. *Rakovich*, 850 F.2d at 1187–88; *Mathewson v. National Automatic Tool Co.*, 807 F.2d 87, 90 (7th Cir. 1986). Thus, we base our analysis on the following facts which are presented with the required inferences drawn and conflicts resolved in favor of Henderson and Jefferson.

Frigid weather descended upon northern Illinois from January 8th through January 11th of 1982. The sub-zero temperatures recorded dropped to twenty-two degrees below zero with a corresponding wind chill factor of eighty degrees below zero. During these abnormally cold days, many areas in the Stateville Correctional Center experienced colder than usual temperatures. But in Cellhouse B–West, the heating system malfunctioned and the inside temperatures

---

1. The question of a new trial is not addressed in this appeal. Notwithstanding Federal Rule of Civil Procedure 50(c)(1), there was no ruling on the alternate motion for a new trial when the JNOV was granted. As we have said before, where the motion for a new trial is not pressed on the trial court after the grant of JNOV, it is abandoned. *Oberman v. Dun & Bradstreet, Inc.*,

507 F.2d 349, 353 (7th Cir.1974); *Vera Cruz v. Chesapeake & O.R. Co.*, 312 F.2d 330 (7th Cir.), *cert. denied*, 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963). Here the appellees failed to pursue their motion for a new trial with the district judge and furthermore, failed to argue for a ruling on that motion in this appeal; we are not obliged to remand for such a ruling.

there fell and remained below freezing. Broken windows in the cell block permitted the frigid outside air to flow in, ice formed in the cells, and "it was cold enough to see your breath." Richard DeRobertis, the former warden of Stateville, and Michael O'Leary, the former assistant warden of operations, were present in B–West at various times during the period from January 8 through January 11. O'Leary testified that it was important with the kind of environmental conditions being experienced by the inmates that the administrative officials be present so inmates would know that officials were aware of the severity of the conditions. Correctional officers, cellhouse workers and the warden wore winter coats, hats and gloves while in B–West during this four-day period. An inmate plumber while doing work in B–West on January 10th wore an overcoat with fur inside, a jumpsuit, pants, shirt, sweatpants, sweatshirt, longjohns, three pairs of socks, work boots with rubber boots over them, gloves and a skullcap and still was not warm.

Segregation inmates who were moved to B–West from their general population cells for violations of prison rules were not permitted to bring along any of their extra clothes such as winter coats or additional shirts. Henderson testified that after the heating system malfunctioned he asked O'Leary for blankets and clothes. Jefferson wrote a letter to DeRobertis complaining that there was no heat, and also asked O'Leary, as he made his rounds, to get him out of Cellhouse B–West.

The assistant warden told the superintendent that extra blankets should be distributed. The superintendent said that extra blankets were passed out starting on Friday, the 8th. A senior corrections officer permitted extra blankets to be distributed upon request, provided that inmates would not use them as rugs. But Henderson, Jefferson and Harris did not receive additional blankets.[2]

Because of security concerns and because his personnel were working to fix the heat problem, assistant warden O'Leary never contemplated moving inmates from B–West to another part of the institution where the heating system worked. Moving a prisoner safely from his cell in Cellhouse B–West to other less secure areas required the presence of a correctional officer and the use of handcuffs on the prisoner. Moreover, despite efforts to bring in employees stranded in their homes by the cold weather, Stateville experienced staff shortages during the four-day period. Stateville officials took measures to have the heating system repaired, but four days passed before Henderson and Jefferson were provided with relief from the freezing conditions in Cellhouse B–West.

■ It was solely on the basis of qualified immunity that the verdict in favor of Henderson and Jefferson was set aside. Qualified immunity is a question of law reserved for the district judge and not the jury, but it must be determined within the framework of the particular facts of the case. *Rakovich*, 850 F.2d at 1180. Thus, it is in the context of the foregoing facts that we must judge the propriety of the district judge's grant of a judgment notwithstanding the verdict in favor of the defendants.

■ Government officials performing discretionary functions will be shielded from liability for damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A constitutional right still may be clearly established even if the precise action in question has not previously been held unlawful, however, the unlawfulness must then be apparent in the light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A court should "look to whatever decisional law is available to ascertain whether the law is clearly established." *Rakovich*, 850 F.2d at 1209 (citing *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir.1985)). Thus, a " 'sufficient consensus'

---

2. Harris testified in the Henderson and Jeffer- son jury trial prior to filing his own complaint.

based on all relevant case law, 'indicating that the officials' conduct was unlawful' " is required. *Landstrom v. Illinois Dept. of Children & Family Serv.*, 892 F.2d 670, 676 (7th Cir.1990) (quoting *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir.1985), *cert. denied* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986)). This court has further elaborated on the "clearly established" standard and said that "the right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987) (citing *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)). We have held that until a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established. *Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988).

■ In its judgment, the district court said it could not "find the right plaintiffs asserted under the facts of this case to have been clearly established in 1982 to remove defendants' qualified immunity." Nevertheless, the district court, in its ruling, noted pre–1982 cases where appellate courts held that the constitution required prisoners to be provided with adequate heat and shelter. For example, the district court cited *Lareau v. Manson*, 651 F.2d 96 (2d Cir.1981) (prisoners are entitled to adequate shelter); *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir.1981) (an institution has eighth amendment obligation to provide prisoners with adequate shelter or quarters); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir.1980) (the state must provide reasonably adequate heat to inmates), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978) (the court said that "an institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety"), *rev'd sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Kirby v. Blackledge*,

530 F.2d 583, 587 (4th Cir.1976) (allegation of inadequate heating reaches the level of cruel and unusual punishment); and *Bell v. Wolfish*, 441 U.S. at 529 n. 11, 99 S.Ct. at 1869 n. 11. Plaintiffs cite additional cases in support of the same proposition. *See Bono v. Saxbe*, 620 F.2d 609 (7th Cir.1980) (the court said that insufficient heat is a factor frequently crucial to finding cruel and unusual punishment); *Gates v. Collier*, 501 F.2d 1291, 1300–01 (5th Cir.1974) (the court found that the "bathroom, kitchen, heating and housing facilities [were constitutionally] inadequate."). These pre-1982 cases describe a clearly established constitutional right of prison inmates to adequate heat. Thus, there was no question that in 1982 a reasonable prison official would have known of a prisoner's constitutional right to adequate protection from extreme cold.

The defendants position, however, is that they could not have known that prisoners had a constitutional right to adequate heat if emergency conditions intervened—apparently because no reported court decision describing inmates' constitutional rights addressed such a factual scenario. Put another way, the defendants claim that there was no clearly established constitutional right for prisoners to have adequate heat and shelter during the period of abnormal weather and heating conditions and therefore the defendants enjoyed immunity from the consequences of their actions in merely restoring the heat to normal after four days had elapsed.

Contrary to defendants' assertion, constitutional rights don't come and go with the weather. The right of prisoners to adequate heat and shelter was known in 1982 and that right is constant. What is not constant is the level of effort and the course of conduct by prison officials necessary to provide adequate protection from extremely cold weather.

■ Government officials will be shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483

U.S. at 638, 107 S.Ct. at 3038. If the evidence demonstrates deliberate indifference by defendants in light of known hazardous conditions and while protective measures were in effect, then defendants are not entitled to qualified immunity. *Rellergert v. Cape Girardeau*, 924 F.2d 794, 797 (8th Cir.1991). The Supreme Court has said that "deliberate indifference" is the standard to be used to determine the culpability of officials in prison condition cases which include claims alleging inadequacies in the temperature a prisoner is subjected to in his cell. *Wilson v. Seiter*, — U.S. —, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991). In this circuit, we have said that defendants acted with deliberate indifference if they possessed actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm could be inferred from their failure to prevent it. *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

 It was the standard enunciated in *Franzen* (and ultimately in *Wilson*, ), that the jury applied in determining whether taking four days to repair the heating system in B–West, without providing any temporary or alternate means of protection from the subfreezing temperatures, constituted deliberate indifference on the part of the defendants. Whether the district judge or this court in weighing *all* the evidence in this case would have found that the defendants acted with deliberate indifference is not before us at this point. We are restricted in our review of contested matters in this case to only those facts in evidence and inferences drawn therefrom which favor Henderson and Jefferson. While given the full range of evidence we may not have found that the defendants acted with deliberate indifference, that was the finding implicit in the verdict the jury was given the opportunity to return upon the denial of defendants' motion for directed verdict. Great credence is given to a jury's verdict in appellate review of a judgment notwithstanding the verdict based on a grant of qualified immunity. *Rellergert*, 924 F.2d

at 797. As the district court found in its analysis,

> [t]he jury by its verdict awarding plaintiffs compensatory damages found that plaintiffs had shown by a preponderance of the evidence [t]hat at defendants O'Leary's and DeRobertis's direction, or with their knowledge or consent, in deliberate indifference to plaintiffs' constitutional rights, plaintiffs were confined in Cellhouse B–West from January 8th through January 11th, 1982.... [A]nd due to defendants' deliberate indifference, plaintiffs did not receive adequate clothing or protection from or relief from the cold.

In sum, in 1982 it was clearly established that prison inmates had a right under the eighth amendment of the Constitution to adequate heat and shelter. Viewing the evidence in the light most favorable to Henderson and Jefferson, the defendants knew of the hazardously cold conditions those two inmates were experiencing in Cellhouse B–West. Thus, under the facts we must consider, reasonable jurors could have found that the defendants' conduct in leaving Henderson and Jefferson exposed to temperatures below freezing for four days without affording them any protection beyond that usually provided when the heating system functioned properly, constituted deliberate indifference to their eighth amendment rights.

The district judge's post-verdict finding of a lack of any clearly established constitutional right under the facts of this case was erroneous, as was his resulting grant of the protection of qualified immunity to the defendants. The existence of a constitutional right to heat and shelter protecting Henderson and Jefferson, coupled with the jury's reasonable interpretation of the facts in reaching its verdict, precluded the district judge from entering a judgment notwithstanding the verdict.

The dismissal of the consolidated case of Willie Williams and Warren Lee Harris was predicated on the erroneous grant of qualified immunity to the same defendants in the case of Henderson and Jefferson.

Therefore, those dismissals were also erroneously granted.

We REVERSE the district court's grant of qualified immunity to the defendants and its entry of a judgment notwithstanding the verdict; order reinstatement of the jury's verdicts in favor of the plaintiffs Henderson and Jefferson and direct that judgment be entered thereon; and VACATE the dismissals of the complaints of Harris and Williams and REMAND those cases for further proceedings.