33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Billy J. BROOKS, Plaintiff-Appellant,
v.
Michael O'LEARY, Defendant-Appellee.
 No. 93-3559.
 United States Court of Appeals, Seventh Circuit.
 Argued May 18, 1994.
Decided Aug. 30, 1994.
 
 Before WOOD, Jr., MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Billy Joe Brooks ("Brooks") is a prisoner of the state of Illinois. Brooks sued prison warden Michael O'Leary ("O'Leary"), among others, under 42 U.S.C. Sec. 1983 for cruel and unusual punishment in violation of the Eighth Amendment. The jury rendered a verdict in favor of Brooks. O'Leary moved for judgment as a matter of law and the district court granted the motion. We affirm.
 
 I. Background
 
 2
 On February 24, 1988, Brooks, an inmate at Stateville Correctional Center in Illinois, stopped by the prison gymnasium to check on the progress of a basketball game. He did not have a pass to do so, however, and was confronted upon his arrival by two members of the prison staff, Superintendent Jimmy Singletary ("Singletary"), and a prison guard, Dwight Neven ("Neven"). As Brooks was escorted away from the gym in handcuffs, words were exchanged. Once they were away from the gym, Singletary and Neven attempted to uncuff Brooks and a physical scuffle ensued. Singletary and Neven claim that Brooks swore profusely, threatened their lives, and turned to swing at Singletary. Brooks claims that, while he may have cursed, he did not swing at Singletary. Rather, he claims that Singletary beat him on the side of his head with a radio.
 
 
 3
 As a result of this altercation, Singletary and Neven filed reports charging Brooks with assault and other violations of prison rules. Brooks went before the Prison Adjustment Committee which found him guilty of assault, intimidation, creating a dangerous disturbance, fighting, and other offenses. The Adjustment Committee sentenced Brooks to 360 days in segregation, 360 days of lost good time credit, and demoted him to C grade status for 360 days.
 
 
 4
 In addition to the proceedings conducted by the Adjustment Committee, O'Leary also instituted an in-house internal investigation of the February 24, 1988 incident. Members of O'Leary's staff interviewed various players in the incident (with the exception of Brooks) and reported back on the matter. After reviewing the report, O'Leary concluded that, although Singletary was subject to a "hair-trigger temper" and had other undesirable traits, there was nothing to indicate that he acted improperly in this case.
 
 
 5
 Brooks, however, continued to assert that Singletary beat him with a radio and also asserted that O'Leary turned a blind eye to the "kangaroo court" that wrongly and intentionally convicted him of assault. He asserted that he was innocent of the assault charge, that everyone knew that he was innocent of the assault charge, and that he was being intentionally punished for something he did not do. On this theory Brooks filed this lawsuit in federal district court alleging a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. A jury trial was held with each party basing its arguments on this theory (that the brining of false charges constitutes cruel and unusual punishment under the Eighth Amendment). The jury was also instructed in this manner:
 
 
 6
 The claim against Defendant O'Leary is that he was deliberately indifferent to the fact that a false charge of assault was being made against the plaintiff.... To prevail on his Eighth Amendment claim against Defendant O'Leary, the plaintiff has the burden of proving ... that the Defendant O'Leary knew of the falsity of the assault charge or was deliberately indifferent to whether the charge was false or not.
 
 
 7
 At the close of the evidence, O'Leary moved for judgment as a matter of law under Fed.R.Civ.P. 50(a). This motion was denied. After the jury came back with a verdict in favor of Brooks, O'Leary again moved for judgment as a matter of law under Rule 50(b) on the basis that there was insufficient evidence to demonstrate that O'Leary was deliberately indifferent to the alleged false charges that were brought against Brooks. The district court granted this motion and Brooks appeals from this ruling.
 
 II. Discussion
 
 8
 As a preliminary matter, we note that Brooks did not plead or prove the kind of "punishment" recognized under the Eighth Amendment. His only allegation throughout these proceedings has been that he was falsely charged with assault when all persons involved knew that he was innocent. He asserts that he was wrongly convicted and, as a result of that conviction, was wrongly punished for something that he did not do (assault Singletary). Complaints about false convictions or sham proceedings, however, do not fall under the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment is concerned only with punishment once a conviction has been legitimately obtained. As the Supreme Court has stated, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Id. Brooks' challenge to the bringing of assault charges (and to the Prison Adjustment Committee's finding of guilt on the assault charge) is clearly a challenge to the proceedings themselves. It is therefore a challenge to the constitutional guarantees of due process and must be brought as such. This error in Brooks' case, however, is ultimately inconsequential. For even if the bringing of false charges did constitute a kind of "punishment" cognizable under the Eighth Amendment, Brooks' claim would fail because he has not presented sufficient evidence on a necessary element of such a claim: the issue of O'Leary's mental state. We conclude, therefore, that the district court was correct in granting judgment as a matter of law in favor of O'Leary.
 
 
 9
 Before turning to the merits, however, we first address Brooks' contention that the defense failed to preserve the issue of O'Leary's mental state in the district court. Specifically Brooks asserts that O'Leary's Rule 50(a) motion was not specific enough to preserve this issue for renewal in his post-trial motion under Rule 50(b). Neither party disputes that O'Leary moved for judgment as a matter of law under Rule 50(a) at the close of the evidence. His motion, however, consisted of only one sentence: "Your Honor, at this point for the record, we would like to make our motion for directed verdict as to Mr. O'Leary and Mr. Neven, particularly Mr. Neven as to the false ticket charge." A trial judge is authorized to grant a Rule 50(b) motion for judgment notwithstanding a jury verdict only if the moving party has moved previously for a directed verdict under Rule 50(a) at the close of the evidence. McKinnon v. City of Berwyn, 750 F.2d 1383, 1387 (7th Cir.1984). A motion under Rule 50(a) must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2). "A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." Fed.R.Civ.P. 50 advisory committee's note to the 1991 amendments. This specificity requirement, however, is not a technical one. 5A Moore's Federal Practice p 50.04 (2d ed. 1994). "Rule 50(a) requires that a motion for directed verdict state its grounds[ ] [in order] to alert the opponent to deficiencies that he may still have time to repair--by asking to reopen his case in chief, or by reshaping his cross-examination of the defendant's witnesses, or by putting in evidence in rebuttal to the defendant's case." McKinnon, 750 F.2d at 1388.[1] "[S]o long as both the court and the adverse party are aware of the grounds for the motion, the specificity requirement is met." 5A Moore's Federal Practice p 50.04 (2d ed. 1994).
 
 
 10
 In the instant case there is no question that Brooks and the district judge were each aware of the grounds upon which O'Leary made his pre-verdict motion for judgment as a matter of law. In the words of the district judge:
 
 
 11
 The court believes that the motion made by defendant at the close of the evidence was sufficient to preserve his basic point that the evidence of actionable conduct on his part was insufficient to warrant submission of the case to the jury. It was not necessary for defendant's counsel to spell out what the court already knew--that defendant was denying that he was guilty of deliberate indifference to the rights of plaintiff.... Had O'Leary's counsel made the same argument at the close of the evidence that he makes in the post-trial motion, plaintiff would not have offered any different or additional evidence. Plaintiff offered everything there was, and the issue at trial ... was the same issue raised in the post-trial motion, namely, whether the evidence shows that the required culpable state of mind on the part of O'Leary.
 
 
 12
 A review of the record in this case reveals that Brooks' counsel argued this issue exhaustively. No effort was spared in an attempt to demonstrate that O'Leary was deliberately indifferent to the alleged false charge against Brooks. It simply cannot be said that Brooks overlooked his proof on this issue. On the facts of this case, therefore, we agree with the district court that, because Brooks and the district judge were fully aware of the basis for O'Leary's Rule 50(a) motion, that motion was sufficient to preserve the issue of O'Leary's mental state for renewal under Rule 50(b).
 
 
 13
 Turning to the merits, a grant of judgment as a matter of law is proper only if reasonable people, viewing the facts most favorably to the plaintiff, and disregarding conflicting unfavorable testimony, could not conclude that Brooks presented a prima facie case. Henderson v. DeRobertis, 940 F.2d 1055, 1057 (7th Cir.1991), cert. denied, 12 S.Ct. 1578 (1992). In this case, we agree with the district court that Brooks failed to present evidence at trial demonstrating that O'Leary was deliberately indifferent to the (alleged) false charges of assault that were brought against Brooks.
 
 
 14
 The Supreme Court has recently taken up this question. In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Court defined "deliberate indifference" and stated that it "describes a state of mind more blameworthy than negligence.... Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " Id. at 1978 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The Court adopted a subjective recklessness standard similar to that used in criminal law, holding that "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety;[2] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979. The official must consciously disregard a substantial risk of serious harm. Id. at 1980. If the substantial risk is obvious, a factfinder may conclude that a prison official knew of it. Id. at 1981.[3]
 
 
 15
 In this case, there is simply no evidence in the record before us from which a reasonable person could conclude that O'Leary was deliberately indifferent under the standard set out above. The evidence does not even convincingly demonstrate negligence (which, of course, is not enough to support liability under the Eighth Amendment). The evidence most favorable to Brooks merely demonstrates that O'Leary was aware that Singletary was hot-tempered, and was possibly aware that Singletary had other character flaws, such as dishonesty or a propensity to mistreat prisoners. Brooks also pointed out that O'Leary may have been aware that there were some minor differences in the reports filed by Singletary and Neven after the February 24, 1988 incident--with Singletary's report making the most severe allegations (including assault). Brooks apparently introduced this evidence to demonstrate dishonesty on the part of both Singletary and Neven and to show that O'Leary knew that they were lying about the assault and turned a blind eye to it. At most, however, this evidence demonstrates that O'Leary entertained doubts about Singletary and "should have known" that something was fishy. Maybe it shows that O'Leary "should have" looked into the matter. But in this case the evidence also reveals that O'Leary instituted an in-house investigation of the matter and stated at trial that he did so in part because of doubts concerning Singletary. We doubt, therefore, that the evidence produced by Brooks supports even an inference of negligence on the part of O'Leary. It certainly does not demonstrate deliberate indifference under the standard announced in Farmer.
 
 
 16
 Having no positive evidence that O'Leary knew of the alleged falsity of the charges, Brooks introduced evidence of inaction on O'Leary's part in an effort to try to prove the requisite knowledge. He alleged that O'Leary's failure to investigate the incident more thoroughly, his failure to bring in outside investigators, and his failure to review the report of the Prison Adjustment Committee more thoroughly all somehow cumulate to demonstrate the necessary knowledge of falsity. Brooks also asserted that O'Leary placed him in the prison's "circuit rider" program (maximum segregation) in order to keep him from contacting witnesses to corroborate his story. Brooks, however, offers no evidence showing how these additional facts demonstrate that O'Leary was deliberately indifferent to false charges. Brooks' assertions on these matters are pure speculation. He has failed to back up these assertions with evidence linking any of O'Leary's actions (or inactions) to a positive knowledge of false charges in this case. He therefore cannot use these additional facts to support a finding of deliberate indifference.
 
 III. Conclusion
 
 17
 After reviewing the evidence in this case, we conclude that Brooks has failed to demonstrate deliberate indifference on the part of O'Leary. We therefore affirm the judgment of the district court.
 
 
 
 [1]
 The advisory committee's note to the 1991 amendments to Rule 50 similarly states that the "articulation [of grounds for the motion] is necessary to achieve the purpose of the requirement that the motion be made before the case is submitted to the jury, so that the responding party may seek to correct any overlooked deficiencies in the proof."
 
 
 [2]
 In this case, as discussed above, Brooks alleged that the "excessive risk" in his case was the brining of false assault charges against him. This, of course, is not a recognized risk to inmate health and safety under the Eighth Amendment. However, for the sake of our analysis of the deliberate indifference element of his case, we accept this characterization
 
 
 [3]
 A standard similar to that articulated by the Supreme Court in Farmer has been in use in this circuit for some time. For example, this court has stated that, in order to prove deliberate indifference, a plaintiff bears the burden of establishing that the defendant had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985), cert. denied, 479 U.S. 816 (1986). "If the word 'punishment' in cases of prisoner mistreatment is to retain a link with normal usage, the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense. Gross negligence is not enough." Id. at 652-53. As in Farmer, this is a subjective standard. McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992). Actual knowledge on the part of a prison official can on occasion, be inferred where the danger is objectively great, see Franzen, 780 F.2d at 653, but if a prison official merely "should have known" of the risk, deliberate indifference can not be inferred. McGill, 944 F.2d at 348