**Elizabeth A. CLARK, individually, and Elizabeth A. Clark, as Personal Representative of the Estate of June Christy Highsaw, Plaintiffs,**

v.

**James M. DONAHUE, M.D., Ruth Stanley, Carolyn Mott, R.N., Joyce Currens, R.N. Garner Johnson, and Obie Turner, Defendants.**

No. IP 92–237 C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 27, 1995.

C. Dennis Wegner, C. Dennis Wegner & Assoc., Indianapolis, IN, for plaintiffs.

Jon Laramore, Deputy Atty. Gen., Indianapolis, IN, John T. Hume, III, Randall C. Helmen, Hume Smith Geddes & Green, Indianapolis, IN, Bruce L. Kamplain, Norris Choplin & Schroeder, Indianapolis, IN, for defendants.

ENTRY

BARKER, Chief Judge.

This matter is before the Court on the motion of Defendants Garner Johnson and Obie Turner for summary judgment. For the reasons stated below, their motion is denied.

I. Background

Plaintiff June Christy Highsaw was admitted to Central State Hospital ("CSH") in the summer of 1970, as a result of an admission agreement signed by her mother, Plaintiff Elizabeth Clark. At the time she was admitted, Highsaw was approximately 14 years old. Highsaw died on November 4, 1991, at the age of 35, while still a patient at CSH.

According to the Coroner's Report, at the time of her death, Highsaw's medical history included chronic paranoid schizophrenia, mild mental retardation, seizure disorders, and bilateral cataracts. Plaintiffs allege that Highsaw died as the result of severe medical and physical mistreatment. The Coroner's Report lists Highsaw's cause of death as hypothermia.

Defendants Johnson and Turner were both CSH employees working on Highsaw's ward on the day she died. Both Johnson and Turner were Psychiatric Attendants Grade IV and Qualified Medication Aides at the time.[1] Turner was also the working leader on Highsaw's ward on the 3:00 to 11:00 p.m. shift, assigning tasks to other psychiatric attendants. It is undisputed that Highsaw's ward was understaffed on the day in question. Although it is not clear which psychiatric attendant (if any) was primarily assigned to Highsaw, both Johnson and Turner testified that they were assigned to observe Highsaw and administer medication to her on the day in question.

It is undisputed that Highsaw's room was cold on the day she died. The Coroner's Report described the room as "extremely cold ... [with] two of the windows in the room ... open." At least one window in her room was broken and had been for some time. The temperature outside that evening was approximately 18 degrees Fahrenheit. Johnson and Turner each testified to covering Highsaw with a blanket one time while observing her.

## II. Discussion

Plaintiffs bring the instant action pursuant to 42 U.S.C. § 1983, contending that Highsaw's constitutional rights were violated in connection with her death. Specifically, Plaintiffs posit that Highsaw's mistreatment amounted to a violation of her substantive due process rights. Defendants Garner

Johnson and Obie Turner (collectively, "Defendants") have moved for summary judgment on Plaintiffs' claims, arguing that Plaintiffs have not made the requisite showing of deliberate indifference and that in any event they are entitled to qualified immunity from Plaintiffs' claims.

■ Summary judgment is proper where:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. *See Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir.1993); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

■ Qualified immunity shields government officials performing discretionary functions from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457

**1.** The job description for Psychiatric Attendant IV includes, *inter alia,* the following duties: acts in emergency situations by notifying appropriate staff, physically aiding residents, and/or modifying adverse resident behavior; observes, records, and reports the condition and behavior of residents and reactions of medications; and, assists in creating and maintaining a safe and healthy environment by performing a variety of housekeeping duties such as cleaning equipment, furniture, facilities, and clothing. The job requirements include: ability to note subtle changes in residents' behavior and physical status and ability to act in emergency situations which require the physical management and protection of patients.

U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The qualified immunity analysis necessarily subsumes the substantive analysis of whether a plaintiff has stated a cognizable violation of constitutional rights against the defendants. That is, the threshold inquiry is central: "If a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of a constitutional right, then the defendant is entitled to qualified immunity." *Wilson*, 42 F.3d at 1064–65 (citations omitted). "At the summary judgment stage, the defendants cannot prevail if the plaintiff can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity." *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir.), *reh'g denied* (1993) (quoting *Hall v. Ryan*, 957 F.2d 402, 404 (7th Cir.1992)).

■ At issue is the right of a mental patient to safe conditions of confinement in a state mental hospital where she was being treated by state actors. As has been previously addressed by this Court in this case, Plaintiffs have stated a cognizable claim for relief. *See* Court's Entry dated March 31, 1995. In 1982, the Supreme Court held that individuals committed to mental institutions are entitled to reasonable care and safe conditions. *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Although *Youngberg* and most of its progeny have focused upon the right of mental patients to be protected from harm at the hands of themselves or fellow mental patients, *see* Entry dated March 31, 1995, at 4–6, these patients are entitled to the same protections from harm in the course of treatment they receive from hospital personnel.

■ Defendants argue that Plaintiffs have not stated and supported a cognizable claim against these particular Defendants because Plaintiffs' allegations do not amount to deliberate indifference on the part of Defendants. The parties dispute the standard to be applied to Defendants' actions (or lack thereof) in determining whether Plaintiffs' supported allegations are sufficient to survive summary judgment. In analyzing violations of the substantive due process rights of mental patients, the Seventh Circuit has adopted the "professional judgment" standard. *Estate of Porter by Nelson v. State of Illinois*, 36 F.3d 684, 688 (7th Cir.1994), *reh'g en banc denied* (1995). "In determining whether an involuntarily committed patient's right to reasonable safety has been violated, courts may only 'make certain that professional judgment in fact was exercised.'" *Id.* (quoting *Youngberg*, 457 U.S. at 321, 102 S.Ct. at 2461). The professional judgment standard differs from the deliberate indifference standard applied in the prison context. *Id.* "Application of the same standard—deliberate indifference—to both settings would undermine the Court's pronouncement that involuntarily committed patients are entitled to more protected 'conditions of confinement' than convicted criminals." *Id.; see also Wendy H. By and Through Smith v. City of Philadelphia*, 849 F.Supp. 367, 373 (E.D.Pa. 1994) ("defendants evaluated under [the professional judgment standard] are constitutionally required not just to respond to danger to safety which they have been put on notice to, but to act in a manner which avails them of that notice").

■ The Seventh Circuit has not addressed whether the professional judgment standard should be applied to nonprofessional hospital caregivers. However, the Third Circuit, in a case cited with approval in *Estate of Porter*, has tackled this issue: "Nonprofessional employees who provide care for involuntarily institutionalized mentally retarded individuals are subject[,] even after *Youngberg*, only to a deliberate indifference standard." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3rd Cir.1990). *Shaw by Strain* involved claims made on behalf of a profoundly retarded resident of a state mental institution for due process violations arising from unreasonable bodily restraint and a failure to protect him from sexual assault. Several of the institution employees named in the lawsuit were residential service aides, and the court found these employees "clearly are nonprofessionals for the purposes of applying the *Youngberg* professional judgment standard." *Id.* at 1147. The court, therefore, applied the deliberate indifference standard to these nonprofessional defendants. *Id.* at 1147, 1150.

■ This Court finds the reasoning in *Shaw by Strain* to be persuasive. Where the hospital employee is in no way a trained professional, either administratively or medically, there is no professional judgment to evaluate. *See Youngberg,* 457 U.S. at 323 n. 30, 102 S.Ct. at 2462 n. 30 ("[b]y 'professional' decisionmaker, we mean a person competent, whether by education, training or experience, to make the particular decision at issue"). There is no evidence that either Johnson or Turner had any medical training or experience prior to taking a job at CSH. Their job descriptions basically encompass tasks performed by nurse's aides in conventional hospitals—feeding patients, attending to patients' personal hygiene and other needs, and general monitoring of patient activities. In other words, there is no evidence that either Johnson or Turner were qualified to make professional judgments. Therefore, this Court finds them both to be nonprofessionals, whose actions are subject to the deliberate indifference standard.

In the context of prison conditions cases, the Seventh Circuit has addressed what constitutes deliberate indifference when inmates are housed in cold temperatures. *See, e.g., Del Raine v. Williford,* 32 F.3d 1024 (7th Cir.1994); *Henderson v. DeRobertis,* 940 F.2d 1055 (7th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992); *see also Lewis v. Lane,* 816 F.2d 1165 (7th Cir.1987). Prison inmates have a right under the Eighth Amendment to adequate heat and shelter. *Henderson,* 940 F.2d at 1060. Deliberate indifference is the standard used to determine the culpability of defendants in prison condition cases which include claims alleging inadequacies in the temperature in a prisoner's cell. *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 301–05, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991)).

In this circuit, we have said that defendants acted with deliberate indifference if they possessed actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm could be inferred from their failure to prevent it.

*Id.* (citing *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). In applying this standard, the Seventh Circuit's threshold inquiry has been whether there is evidence that the defendants knew of the cold conditions. *See Del Raine,* 32 F.3d at 1036; *Henderson,* 940 F.2d at 1060. In *Del Raine,* there was evidence that the plaintiff had two broken windows in his cell, through which extremely cold air came in. 32 F.3d at 1036. The defendants provided the plaintiff with one extra blanket. *Id.* The court concluded, however, that genuine issues of material fact concerning the state of mind of the defendants precluded summary judgment. *Id.* at 1038.

■ Similarly, in the instant case, there are genuine issues of material fact as to whether Defendants acted with deliberate indifference. As noted above, it is undisputed that Defendants knew about the cold temperature in Highsaw's room. It is not clear whether they had actual knowledge of the impending harm or whether it was easily preventable by them. Defendants point out that Plaintiffs have not submitted any proof that Defendants were empowered to move a patient from her room. By the same token, Defendants have not provided the Court with any proof that they were forbidden from doing so. All of these issues must be resolved before a determination may be made of whether Defendants acted with deliberate indifference. Therefore, Defendants are not entitled to summary judgment for a lack of showing of deliberate indifference.

■ Even with the genuine issues of material fact as to deliberate indifference, Defendants would still be entitled to summary judgment on qualified immunity grounds if the constitutional standards alleged to have been violated were not clearly established at the time in question. *Wilson,* 42 F.3d at 1064 (citations omitted).

A right is clearly established for qualified immunity purposes only where the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right and in the light of pre-existing law the unlawfulness of the official's acts was apparent. *Pounds v. Griepenstroh,* 970 F.2d 338, 340 (7th Cir.1992) *cert. denied,* —— U.S. ——, 113

S.Ct. 1256, 122 L.Ed.2d 654 (1993) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)) (punctuation omitted). Because the inquiry is purely an objective one, an official's subjective intent and beliefs are irrelevant. *Davis v. Owens,* 973 F.2d 574 (7th Cir.1992). Accordingly, whether a right was sufficiently clearly established for purposes of invoking qualified immunity is a question of law. *Marshall,* 984 F.2d at 793.

■ Defendants' arguments also fail under this prong of the test. As noted above, in 1982 the Supreme Court held that individuals committed to mental institutions are entitled to reasonable care and safe conditions. *Youngberg,* 457 U.S. 307, 102 S.Ct. 2452. It is clearly unsafe for a resident of a mental institution to be housed for extensive periods of time in a dangerously cold room.[2] Additionally, since at least 1985, the standard for deliberate indifference in conditions of confinement has been defined. *Henderson,* 940 F.2d at 1060 (citing *Duckworth,* 780 F.2d at 653). Therefore, the relevant constitutional standards were established at the time in question and Defendants are not entitled to summary judgment on the grounds of qualified immunity.

III. Conclusion

For the reasons stated above, the summary judgment motion of Defendants Garner Johnson and Obie Turner is denied.

It is so ORDERED.

---

**2.** The fact that this exact scenario has not presented itself in the form of a reported opinion does not impact this qualified immunity analysis. *See Eberhardt v. O'Malley,* 17 F.3d 1023, 1028 (7th Cir.1994) (the most basic and fundamental violations of constitutional rights rarely even arise in published opinions).