Anthony DIXON, Plaintiff–Appellant,

v.

Salvador A. GODINEZ, Theopolis Smith, Thomas P. Roth & Dennis Jennings, Defendants–Appellees.

No. 95–1502.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1997.

Decided May 20, 1997.

Robert J. Palmer, Matthew Doring (Law Student, argued), May, Oberfell & Lorber, South Bend, IN, for Plaintiff-Appellant.

Janon E. Fabiano (argued), Kenneth H. Levinson, Office of Attorney General, Chicago, IL, for Defendants-Appellees.

Before BAUER, EASTERBROOK, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Anthony Dixon, a state prisoner, sued several officials at Stateville Correctional Center, claiming that the conditions of his confinement in the prison's protective custody wing violated the Eighth Amendment. 42 U.S.C. § 1983. Dixon claimed that his cell became so cold each winter that ice formed on the walls and he could see his breath, while inadequate ventilation made the air stagnant and fetid in summer. The district court granted summary judgment in favor of defendants on the ground that the cold and poor ventilation were not serious enough to state a constitutional claim. We affirm the grant of summary judgment on the inadequate ventilation claim, and reverse on the claim of extreme cold.

## I.

Anthony Dixon is an Illinois prisoner incarcerated at Stateville Correctional Center. Defendants concede that because of threats of gang retaliation, he requires housing in the prison's protective custody wing. Stateville's protective custody wings have three stories of twelve cells each. During the period which this complaint covers, from December, 1990 through December, 1993, Dixon was assigned to several different cells on the lower floors of H–Wing. According to Dixon's complaint and deposition, supplemented by affidavits from several other prisoners, the rooftop central heating system does not adequately force air down through the ventilation system. The result is that, in wintertime, the third floor is too hot while the two lower floors are too cold. When the heat is on, the walls "sweat" and, as the temperature becomes colder, the water freezes on the walls. The basic clothing which officials issue to each prisoner who enters the system includes long underwear, a cap, gloves, and a jacket.[1] Each prisoner also has two sheets and a blanket. Dixon asserted that this clothing was insufficient to keep his extremities from getting freezing cold while he sits in his cell, and made it impossible to write or do legal work. He conceded that it was possible to sleep despite the cold if he bundled up in all the clothing issued to him.[2] Requests for space heaters and extra blankets went unfulfilled, though Dixon maintains that favored prisoners occasionally did receive space heaters. Defendants submitted no evidence refuting either the allegation that ice regularly forms on cell walls in winter, or that the average temperature was forty degrees.

In early 1994 Dixon, proceeding *pro se*, filed the instant lawsuit against Salvador Godinez, the warden at Stateville;[3] Thomas Roth, Godinez' predecessor as warden; Dennis Jennings, the manager of Stateville's protective custody unit; and Theopolis Smith, Jennings' predecessor. Dixon claimed that the conditions of his confinement violated his rights under the Eighth Amendment. Judge Williams declined to appoint counsel for him. After limited discovery, the defendants moved for summary judgment. The district court granted the motion, ruling that conditions at Stateville did not violate the Constitution.

## II.

### A.

Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833–34, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Prisoners are, however, entitled to "the minimal civilized measure of life's necessities," including adequate shelter. *Id.* For this reason, prisoners have a right to protection from extreme cold. *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996); *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir.1995) (*per curiam*). In the case at bar, the district court found that the heat provided to Dixon's cell was "clearly inadequate," and a problem of "long standing." Nonetheless, the court found that the cold cell was not constitutionally inadequate, first because the clothing and blanket provided adequate protection from the cold, and second because Dixon alleged only cold, rather than cold in combination with other intolerable conditions, such as inadequate plumbing, broken windows, cells infested by pests, or overcrowding. We review the district court's grant of summary judgment *de novo*, with the record and all reasonable inferences

---

1. The record does not make clear whether such clothing is standard issue for every prisoner in all Illinois prisons, or whether certain items, like the long underwear, are specific to Stateville. Prisoners can also buy some clothing, such as shirts and jeans, at the prison commissary.

2. Dixon's deposition includes the following exchange:

Q How many layers of clothing did you have to wear to be warm?

A I used to sleep in my long underwear and put on my coat and gloves, cap.

Q And then you were warm?

A I could tolerate it, put it that way.

3. George DeTella has since replaced Godinez as warden. Because Dixon sued Godinez in his personal as well as official capacity, Godinez remains a proper party to the suit.

drawn therefrom viewed in the light most favorable to Dixon, the non-movant. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.1997).

The defendants' main argument on appeal is that the cold was not sufficiently serious to amount to an Eighth Amendment violation. They note, correctly, that in several Eighth Amendment cases, the successful litigant was not only exposed to cold, but also lacked alternative means of keeping warm. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996) (no blankets to combat cold); *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir.1995) (no clothes, bed, or bedclothing in mid-November); *Del Raine v. Williford*, 32 F.3d 1024, 1031 (no clothing, broken window, and wind chill forty degrees below zero); *Henderson v. DeRobertis*, 940 F.2d 1055 (7th Cir.1991) (malfunctioning heating system, broken window, subzero air temperature). Dixon, in contrast, had a blanket, while his standard-issue clothing included long underwear, jacket, cap, and gloves.

The question, however, is not simply whether the inmate had some alternative means of warmth, but whether the alternative was adequate to combat the cold. *See Antonelli*, 81 F.3d at 1431. Moreover, it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional. In *Del Raine*, for example, the most extreme exposure lasted only as long as it took to conduct a strip search, but the cold was brutal. 32 F.3d at 1031. In *Henderson*, the inmate plaintiffs had standard-issue prison clothing and bedclothes, but were not issued extra blankets, winter coats, or additional shirts during a four-day period when the temperature plummeted below zero and the prison heating system malfunctioned. 940 F.2d at 1057–60. In *Murphy*, the prisoner lacked clothing and bedclothing; the cold was less severe than in *Del Raine* or *Henderson*, but the deprivation persisted for a week. 51 F.3d at 720–21. A condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time. *Antonelli*, 81 F.3d at 1431.

The conditions which Dixon had to endure were clearly not as severe as those in *Murphy*, *Del Raine*, or *Henderson*. Unlike those cases, however, the cold of which Dixon complains persisted for months, winter after winter. Like the plaintiffs in *Henderson*, Dixon had standard-issue prison clothing and a blanket, which he maintains were inadequate to combat the cold (*see infra*). Though we do not say that it can never be resolved on summary judgment, the question of whether the severity of the cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the Eighth Amendment is one which will often be peculiarly appropriate for resolution by the trier of facts.

Defendants also argue that cold alone is insufficient to support a conditions-of-confinement claim. That is contrary to the law of this circuit: "[a]n allegation of inadequate heating may state an eighth amendment violation." *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir.1987). In *Lewis*, we vacated a grant of summary judgment in favor of prison officials where two inmates alleged "that the temperature at times fell to between 52 and 54 degrees" during December and January of 1983–84. *Id.* In the case at bar, defendants do not counter Dixon's allegations that the temperature averaged about 40 degrees—which necessarily means that at times it fell below freezing—throughout each of four consecutive winters. It is true that most successful Eighth Amendment claims often involve allegations of cold in conjunction with other serious problems. *See, e.g., Antonelli*, 81 F.3d at 1431–33 (cold, excessive noise, pest infestation); *Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir.1975) (cold and no personal hygiene items); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980) (cold, defective plumbing, excessive mold and fungus, and pest infestation). And the Supreme Court has recognized that some conditions, which taken singly do not constitute cruel or unusual punishment, may in cumulative effect violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (citing low nighttime cell temperature plus a failure to issue blankets as an example).

■ The caselaw does not, as defendants urge, stand for the proposition that cold alone falls below the minimum necessary for a successful conditions-of-confinement claim. Taken as a whole, the cases suggest that courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold. The cases do not suggest that any one of these factors, or even a combination of factors, is necessarily determinative of a claim's success or lack thereof.

It is of course true that just because low temperature forces a prisoner to bundle up indoors during the winter does not mean that prison conditions violate the Eighth Amendment. And it appears that the district court correctly deduced from Dixon's deposition that the prison-issued clothing and bedding were minimally adequate at night. *See Wilson*, 501 U.S. at 304, 111 S.Ct. at 2327. Defendants, however, insist that Dixon's deposition testimony shows that he found the conditions "tolerable." This refines too much on Dixon's use of a single word (*supra* note 2), which in context may mean nothing more than that Dixon had survived the condition so far. Moreover, defendants' contention misstates the record. Dixon actually said that he could tolerate the cold enough to sleep if he bundled up in long underwear, cap, and gloves.

■ But Dixon complains of daytime as well as nighttime temperature. His unrefuted testimony that ice persistently formed on the walls of the cells suggests that temperatures in the cell block were literally freezing, during the day as well as at night, and that this condition continued unchanged for several winters. That is more than just "harsh and uncomfortable." *Farmer v. Brennan, 511 U.S. at 833–34,* 114 S.Ct. at 1977. It has long been clear that prison officials must protect their wards from such conditions: the minimal standards required by the Eighth Amendment include the right of a prisoner "not to be confined in a cell at so low a temperature as to cause severe discomfort[.]" *Del Raine,* 32 F.3d at 1035; *Henderson,* 940 F.2d at 1060. We are dubious of defendants' insistence that a single blanket is sufficient to combat such cold persisting for weeks on end. Moreover, it must be remembered that in the protective custody unit, prisoners are confined to their cells twenty-three hours per day. They do not spend all of this time in bed. Dixon, for example, asserts that the extreme cold during the day made it impossible to do such simple tasks as write a letter, or do legal work. Cold temperatures need not imminently threaten inmates' health to violate the Eighth Amendment. *Del Raine,* 32 F.3d at 1035. Viewing the record in Dixon's favor, it appears that a material dispute remains as to whether the prison's standard-issue clothing and bedding provided Dixon with the constitutionally necessary minimum protection against severe cold, particularly for daytime activities. That precludes summary judgment on this issue.

■ To succeed in a conditions of confinement claim, of course, a prisoner must also show that prison officials were deliberately indifferent to his needs. *Wilson,* 501 U.S. at 301–04, 111 S.Ct. at 2325–27. Because it found that Dixon received constitutionally adequate shelter, the district court never reached this question. Defendants nonetheless urge us to affirm on grounds that there is no evidence of deliberate indifference. The record, however, indicates a material dispute on this issue as well.

Defendants, in their answers to Dixon's complaint, categorically denied knowing about the cold temperatures in the protective custody unit. Dixon, in contrast, alleged that he told defendants about the extreme cold, as did other prisoners in the same unit, and defendants responded variously by ignoring him, suggesting he file a lawsuit, and telling him there were no extra blankets or space heaters. Dixon and another prisoner, however, allege that guards used to give one or two favored prisoners space heaters. Dixon also alleged that one of the officers told him that if he didn't like the conditions, he could transfer back to the general population—not, as defendants admit, a viable option for someone like Dixon, who fears gang retribu-

tion. Another prisoner's affidavit states that when he complained about the cold, a prison officer made a similarly callous response, "offering" to arrange a transfer to Menard. Taken as a whole, the affidavits imply that prison officials have in fact known about the problem of extreme cold for years—possibly since Stateville opened in 1980—and done nothing to correct it. And while officials do not act with "deliberate indifference" if they are helpless to correct the protested conditions, *Del Raine,* 32 F.3d at 1038, defendants do not attempt to argue that they were powerless to correct the conditions of which Dixon complains.

■ Defendants do argue that they could not have known how severe the cold was, because Dixon did not complain of it with sufficient frequency, and never made use of the prison's formal grievance procedure. We do not see the significance of Dixon's failure to file a formal grievance, since he clearly did complain via other channels. Moreover, Dixon undercuts defendants' contention with evidence that he was hardly the only prisoner in the protective custody wing to complain of excessive cold. The record indicates that Dixon's was not the only lawsuit filed concerning extreme cold at Stateville. Indeed, this is not the first time that problems concerning an inadequate heating system at Stateville have found their way before this court—and while we assume that the broken window at issue in *Henderson* has been fixed, not much else seems to have changed.

■ In the memorandum supporting their motion for summary judgment, defendants argued that knowing about a problem and doing nothing about it does not indicate an intention to cause Dixon harm, and therefore such inaction at best constituted negligence rather than deliberate indifference. Deliberate indifference, however, "is satisfied by something less than acts or omissions for the very purpose of causing harm[.]" *Del Raine,* 32 F.3d at 1031. Rather, it "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985). Because requests for relief which have fallen on deaf ears may evidence deliberate indifference, *id.,* prison officials who know about a condition which poses an excessive risk of harm to inmates, such as bitterly cold cells, may be liable under the Eighth Amendment for disregarding that condition. *Del Raine,* 32 F.3d at 1032. And the sarcastic responses which, Dixon maintains, he received from prison officials when he complained about the cold, help raise a dispute about both defendants' knowledge of the condition, and their refusal to take steps to prevent it.

In the case at bar, as the district court recognized, the conditions of which Dixon complains persisted for years, and allegedly affected all inmates in the protective custody unit, not just Dixon. Because the record as developed does not demonstrate that defendants were powerless to correct the conditions that Dixon alleged to exist, *id.* at 1038; *Wilson,* 501 U.S. at 301–02, 111 S.Ct. at 2325–26, there are triable issues concerning both defendants' actual knowledge of the conditions, and their ability to correct them.

## B.

■ Finally, Dixon complains that his cell also had inadequate ventilation during the summer, which made the air stagnant and fetid. This claim lacks merit. The district court correctly found that the poor ventilation at Stateville in summer was not extreme enough to violate the constitution. Dixon's cell had a window which opened, while a small "chuckhole" in the door provided a minimum of cross-ventilation. Moreover, each cell had an electric fan. And Dixon has offered only conclusory allegations, without backing from medical or scientific sources, that the rank air exposed him to diseases and caused respiratory problems which he would not otherwise have suffered. Such conditions do not fall below "the minimal civilized measure of life's necessities." *Farmer v. Brennan, 511 U.S. at 833–34,* 114 S.Ct. at 1977.

## CONCLUSION

Under the posture of this case, we must accept as true Dixon's allegation that it was

so cold in his cell that ice formed on the walls and remained throughout the winter, every winter. Cold so extreme and long-lasting may create a condition sufficiently harsh to violate the Eighth Amendment. Clearly there is a material dispute whether the prison's standard-issue clothing and bedclothing were adequate to combat the cold, particularly for daytime activities. And Dixon has presented sufficient evidence that defendants knew of and deliberately ignored the cold to preclude summary judgment. His claim of inadequate ventilation, however, lacks merit. Accordingly, we AFFIRM the district court in part, and REVERSE and REMAND in part. Because the case presents potentially complex litigation issues, affecting other prisoners at Stateville as well as Dixon, we urge the district court, on remand, to reconsider its decision not to appoint counsel for Dixon.