139 F.3d 901
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John M. HOLLAND, William G. Turpin, and Harry E. Ferguson,
Plaintiffs-Appellants,
v.
Craig HANKS, Superintendent, Randy Hamilton, Terry Hylton,
et al., Defendants-Appellees.
 No. 97-3660.
 United States Court of Appeals, Seventh Circuit.
 Submitted Mar. 3, 1998*.
Decided Mar. 3, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. IP 96-0881-C-H/G David F. Hamilton, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiffs John Holland, William Turpin, and Harry Ferguson are inmates of the Indiana state prison system who claim that various conditions at the Wabash Valley Correctional Facility (WVCF) violate their constitutional rights under the Eighth and Fourteenth Amendments. Their claims under 42 U.S.C. § 1983 alleged ineffective ventilation and double-celling, both of which contributed to the transmission of airborne communicable diseases including tuberculosis and unreasonably high levels of second-hand smoke: inadequate medical care; and equal protection violations. Early in the proceedings, the district court dismissed sua sponte their claims against four defendants because it found that the plaintiffs had failed to allege any personal involvement by those defendants in the constitutional deprivations.[1] The district court then granted summary judgment in favor of the remaining defendants. The plaintiffs appeal both of these decisions. We affirm.
 
 
 2
 We first review the district court's dismissal of four defendants: Indiana Governor Evan Bayh, Department of Corrections Commissioner Christian DeBruyn, Building Commissioner Gerald Dunn, and Department of Health Commissioner John Bailey. The plaintiffs claimed, among other things, that WVCF was designed and constructed with a ventilation system inadequate to prevent the spread of carcinogenic second-hand smoke and communicable airborne diseases including tuberculosis. The plaintiffs alleged that, although the problems with the WVCF ventilation system quickly became apparent, these four officials instigated and approved a policy of double-celling inmates that increases the likelihood of disease. These allegations fall short of suggesting that any of the four defendants acted with the required deliberate indifference toward the plaintiffs, and thus fail to state a valid claim.
 
 
 3
 In order to state an Eighth Amendment claim, a prisoner must allege that an official was deliberately indifferent to a known risk of serious harm to the inmate. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The plaintiffs did not allege that any of the four state officials had actual knowledge that a practice of double-celling prisoners, when combined with the WVCF ventilation system, posed a substantial risk of serious harm to inmates' health. Nor did the plaintiffs allege that any of these four defendants had personal or official responsibility for correcting the alleged defects in the WVCF ventilation system. The district court did not err in dismissing these four defendants.
 
 
 4
 The district court also granted summary judgment to the remaining defendants (WVCF Superintendent Craig Hanks. WVCF Maintenance Supervisor Terry Hylton, and WVCF Maintenance Foreman Randy Hamilton) on the plaintiffs' claims. The plaintiffs essentially claimed that:
 
 
 5
 (1) the ventilation system at WVCF "is insufficient in design and operation to maximize their protection from exposure to tuberculosis ("TB"), high levels of environmental tobacco smoke ... and other infectious airborne diseases," Appellants' Br. at 2, and that double-celling prisoners compounded the problem by increasing prison population density, thereby increasing the amount of cigarette smoke in the system and the spread of airborne diseases;
 
 
 6
 (2) the medical care provided at WVCF does not adequately track and treat prisoners infected with TB or affected by second-hand smoke; and
 
 
 7
 (3) the services available at WVCF violate the plaintiffs' equal protection rights because better services are available at other state prisons in Indiana.
 
 
 8
 Our review of the record demonstrates that none of these claims can survive summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the movants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In opposing summary judgment, a plaintiff may not rest on his pleadings but must come forward with evidence sufficient to show an issue of fact on each element as to which he would bear the burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When determining whether factual issues exist, the court views all evidence in the light most favorable to the nonmoving party, and draws all inferences in the nonmovant's favor. Dixon v. Godinez, 114 F.3d 640, 642-43 (7th Cir.1997). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." ' Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We review the grant of summary judgment de novo. Dixon, 114 F.3d at 642.
 
 
 9
 A. Plaintiffs' Exposure to Tobacco Smoke and Airborne Diseases
 
 
 10
 The basic premise of the plaintiffs' claim--that exposure to unreasonably high levels of disease-causing materials may violate the Eighth Amendment rights of prisoners--is sound. For instance, in Helling v. McKinney, 509 U.S. 25, 34-35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that allegations of exposure to unreasonably high levels of second-hand cigarette smoke stated a valid Eighth Amendment claim. See also DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir.1990) (continuing failure by prison officials to institute system to prevent the unchecked spread of tuberculosis violated the Eighth Amendment). To successfully defend against summary judgment, however, the plaintiffs must present supporting evidence of such exposure. The plaintiffs have not met this burden.
 
 1. Second-Hand Smoke
 
 11
 To prevail on a theory that second-hand smoke in the prison is causing a substantial risk to their health, the plaintiffs must demonstrate that the level of second-hand smoke in their cells is unreasonably high, see Helling, 509 U.S. at 35, and that the smoke caused or is likely to cause them serious health problems. See Oliver v. Deen, 77 F.3d 156, 160-61 (7th Cir.1996). To meet this burden, the plaintiffs have submitted personal affidavits testifying that the levels of second-hand smoke in their cells is high, that the prison ventilation system does not work well, and that a ban on smoking in the cells is not enforced. The plaintiffs state that they have experienced nosebleeds, eye irritation, dizziness, shortness of breath, and headaches, which they blame on the presence of second-hand smoke. The plaintiffs also submitted information on the ventilation system at WVCF indicating that the cells are ventilated solely through two 7-8" vents in each cell, one of which blows air into the cell and the other of which is for outflow. The only other openings in the cells are small windows ("cuffports") in the otherwise solid cell doors, which can be opened for passing food trays in and out. Although the cells each have a window, the windows do not open. In response to a grievance filed by plaintiff Ferguson complaining about smoke in the cells due to poor ventilation and inmate smoking, Regional Director for Southern Region Adult Operations Steve McCauley wrote, "If there is a problem with the ventilation system, the maintenance department should be contacted. However, there may not be much that maintenance can do because of the design of the facility."[2] Ferguson Decl., Ex. 1. Two inmates are assigned to each 8' by 10' cell. Inmates typically spend 18 hours per day in their cells, and may spend as many as 23 hours there. Ferguson Decl. p 12.
 
 
 12
 Although this evidence, which is largely unrebutted by the defendants, suggests that levels of second-hand smoke may be unreasonably high in the plaintiffs' cells, the plaintiffs have failed to submit evidence that the smoke levels have caused or are likely to cause them serious injury. The only past injuries that the plaintiffs attribute to the smoke are eye irritation, nosebleeds, dizziness, headaches, and shortness of breath. Even as to these conditions, the plaintiffs have offered no evidence (other than their own beliefs) that the conditions were actually caused by the second-hand smoke in their cells. While we recognize that the health conditions experienced by the plaintiffs could cause them distress and discomfort, they have not shown (1) that these conditions were caused by the environmental smoke in their cells, or (2) that the conditions were serious enough to rise to the level of an Eighth Amendment violation. Oliver, 77 F.3d at 160-61. Nor have the plaintiffs produced any evidence that they are subject to increased health risks in the future. See Helling, 509 U.S. at 36 ("determining whether [a plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm").
 
 
 13
 "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiffs have produced no evidence of any excessive or serious threat to their health presented by the smoke levels in their cells, and thus have not demonstrated the existence of a genuine issue of material fact on this issue. Accordingly, we affirm the district court's grant of summary judgment on the plaintiffs' claims related to second-hand smoke.
 
 2. Airborne Infectious Diseases
 
 14
 The plaintiffs also fail to show that conditions at WVCF place them at an unreasonable risk of contracting airborne infectious diseases such as tuberculosis. Plaintiff Holland, the only plaintiff infected with tuberculosis, tested positive for tuberculosis upon his entry into WVCF in 1993. His infection thus pre-dates his contact with WVCF, and could not have been caused by conditions at that facility. The plaintiffs have not submitted any other evidence suggesting that conditions at WVCF have led to an outbreak of tuberculosis or other airborne infectious diseases. The district court was correct to enter summary judgment against the plaintiffs on this claim.
 
 B. Inadequate Medical Care
 
 15
 The plaintiffs claim that the defendants denied them proper medical care in connection with their nosebleeds, eye irritation, dizziness, shortness of breath, and headaches, and Holland's tuberculosis. As to the first list of symptoms (nosebleeds, etc.), Ferguson claims that he was denied any medical treatment until after he filed this action, and Holland states that he has been advised that the medical staff can do nothing about the symptoms. The district court correctly held that these complaints did not rise to the level of harm that would implicate the Eighth Amendment. The Eighth Amendment does not require medical treatment of minor health conditions that would not cause most non-incarcerated people to seek medical attention. Cooper v. Casey, 97 F.3d 914, 916 (7th Cir.1996). In the absence of particular frequency or severity, which the plaintiffs do not allege, all of the symptoms listed by the plaintiffs fall into this category.
 
 
 16
 Holland's infection with tuberculosis is more serious, but here the plaintiffs fail to show that the defendants have been deliberately indifferent to Holland's medical needs. Holland's tuberculosis infection is inactive rather than active. While active infections are contagious and are associated with a variety of ill effects in the infected person, inactive infections are not. Treatment of active cases focuses on quarantine and treatment of the infection itself. By comparison, the focus in inactive cases is on monitoring them to ensure that they do not "convert" to active cases.
 
 
 17
 Holland was given a PPD test for tuberculosis upon his entry to WVCF in 1993, and tested positive. His chest was then x-rayed to see whether his tuberculosis was active; the x-ray showed no signs of active tuberculosis. Holland did not receive any medication or other treatment for his inactive tuberculosis. Holland was given PPD tests again in 1994 and 1995, both of which not surprisingly were positive, because someone with an inactive case of tuberculosis will always show positive results to a PPD test.[3] He did not receive another chest x-ray until late in 1995, after he complained of a persistent cough and shortness of breath. The chest x-ray did not reveal any active tuberculosis.
 
 
 18
 WVCF tuberculosis protocol calls for inmates with inactive tuberculosis to be monitored through chest x-rays every three years, or earlier if the inmate reports symptoms consistent with active tuberculosis. The protocol is based on current recommendations of the Center for Disease Control. Holland's treatment complied with this aspect of the protocol. The WVCF protocol also suggests that inmates with inactive tuberculosis be treated with isoniazid, a course of preventive medication that greatly reduces but does not eliminate the possibility that the tuberculosis will become active later in life. As noted before, Holland did not receive any medication for his inactive tuberculosis. The defendants submitted an affidavit from a registered nurse testifying that prophylactic therapy is not mandatory for individuals with inactive tuberculosis, so long as their chest x-rays are normal; rather, such treatment is "generally left to the medical judgment of the physician treating the individual." Blann Decl. p 8. The plaintiffs have not produced any evidence that Holland's condition requires any further treatment at present. While preventive medication may be desirable for Holland, it is not constitutionally required. Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997) (under the Eighth Amendment, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm," not the best possible care or even the preferred method of treatment). Holland has suffered no harm from the treatment he has received to date, and that treatment shows that the defendants are not indifferent to his medical needs. The district court correctly granted summary judgment on the plaintiffs' claims of inadequate medical care.
 
 C. Equal Protection
 
 19
 The plaintiffs' final claim is that they were denied equal protection of the laws because the services and activities available at WVCF are not the same as those available at other Indiana state prisons. As the district court aptly stated, "What [the plaintiffs] have alleged ... is merely that the conditions at Wabash Valley are less to their liking than the conditions at other Indiana prisons. This does not constitute a viable equal protection claim." Holland v. Bayh, No. IP 96-0881-C H/G (S.D.Ind. Sept. 29, 1997) (unpublished order). Prison officials "must balance many considerations, ranging from the characteristics of the inmates at that prison to the size of the institution, to determine the optimal mix of programs and services. Program priorities thus differ from prison to prison, depending on innumerable variables that officials must take into account." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir.1994) (citation omitted).
 
 
 20
 The plaintiffs also argue that they are discriminated against because they are white and non-Muslim, yet they are compelled to eat a prison menu designed in large part to accommodate the dietary preferences of black Muslim inmates. The plaintiffs have failed to produce any evidence that the prison menu in fact unfairly discriminates against their dietary wishes; the sole menu submitted lists frequent servings of pork and beef, two of the foods the plaintiffs complain they are missing. The plaintiffs' argument also fails because they have not shown that any inmate at WVCF, whatever his race or religion, is given any other menu. Thus, all inmates are treated alike. For the plaintiffs to say that they dislike this menu more than black or Muslim inmates is simply conclusory, and does not show that they have been singled out for unfavorable treatment. The plaintiffs have not produced a scintilla of evidence of any discriminatory animus on the basis of race or religion in selecting the services, programs, or menu provided at WVCF. We affirm the district court's grant of summary judgment on this claim.
 
 
 21
 None of the plaintiffs' claims can withstand the defendants' motion for summary judgment. The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 The district court initially issued an order staying service of the complaint upon these four defendants for 30 days and requiring the plaintiffs to show why the defendants should not be dismissed. Holland v. Bayh, No. IP 96-0881-C H/G, (S.D.Ind. July 9, 1996) (unpublished order). When the plaintiffs moved for more time to respond, the district court denied their motion and dismissed the four defendants, finding that the discovery sought by the plaintiffs in order to respond was not relevant to the defendants' involvement in this action. Holland v. Bayh, No. IP 96-0881-C H/G, (S.D.Ind. Aug. 2, 1996) (unpublished order)
 
 
 [2]
 The WVCF ventilation system has been the subject of other lawsuits as well. For instance, in Becktemba v. Hanks, No. TH 94-120-C M/H (S.D.Ind. July 11, 1997) (unpublished order denying summary judgment), another civil rights suit filed by inmates at WVCF, the court found that defects in the ventilation system regularly resulted in cell temperatures between 90 and 110 degrees during the summer
 
 
 [3]
 Holland contends that giving these later, unnecessary PPD tests ran counter to the WVCF protocol and thus constituted improper medical care. He has shown no harm from these unnecessary tests, however