**Nyka Tassiant O'CONNOR, Plaintiff–Appellant,**

v.

**KELLEY, Correctional Officer, Nelson, Correctional Officer, Temples, Sergeant, Hammontree, Captain, Grice, Nurse, et al., Defendants–Appellees.**

**No. 14–13101**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Feb. 29, 2016.

---

* Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Nyka Tassiant O'Connor, Raiford, FL, pro se.

Florida SP Warden, Warden, Florida SP–Inmate Trust Fund, Raiford, FL, for Plaintiff–Appellant.

Sean William Gellis, Pam Bondi, David W. Grimes, Attorney General's Office, Tallahassee, FL, for Defendants–Appellees.

Before HULL, MARCUS, and EDMONDSON, Circuit Judges.

PER CURIAM:

Nyka Tassiant O'Connor, a Florida prisoner proceeding *pro se,* appeals the district court's dismissal of his sixth-amended complaint, filed pursuant to 42 U.S.C. § 1983, against the Florida Department of Corrections ("FDOC"), the Santa Rosa Correctional Institution ("SRCI"), and twelve SRCI correctional officers and nurses, in their individual capacity (collectively, "Defendants"). O'Connor also challenges the district court's denial of injunctive relief. No reversible error has been shown; we affirm.

Briefly stated, this case arises out of a series of events that happened in January

2010 when O'Connor was an inmate at SRCI. O'Connor alleges that, while on suicide watch and self-harm observation status, he ingested intentionally a paper clip and a razor blade. Shortly thereafter, Defendant officers found O'Connor lying on the floor of his cell. When the officers entered O'Connor's cell, a fight broke out between O'Connor and the officers. During the struggle, O'Connor alleges that Officer Kelley bit O'Connor on the arm.

O'Connor was then placed in restraints. While O'Connor was lying restrained on the floor, Officer Morris allegedly placed his knee "hard" against O'Connor's head, forced O'Connor's arms beyond their normal range of motion, and made death threats to him. Although some Defendant officers were present, O'Connor alleges that the officers did nothing to stop Officer Morris.

O'Connor contends that Defendant officers failed to document properly the incident and that SRCI and FDOC failed to punish Defendant officers or to transfer O'Connor to another prison. O'Connor also alleges that Defendant nurses—responding to O'Connor's repeated requests—tested O'Connor for possible blood-borne diseases O'Connor may have contracted from the bite wound but then refused to give O'Connor his test results.

Sometime after the fight, O'Connor was placed on strip-cell status, allegedly as punishment for assaulting Officer Nelson.[1] O'Connor says he was on strip-cell status for "longer than 72 hours (weeks)." During that time, O'Connor remained in a "cold cell" without a blanket, mattress, or bed and with only a "suicide shroud" to wear. He "slept stooping down on the cold floor," "sitting with his head against the cold wall," or lying down on the "extremely cold floor."

In his sixth-amended complaint, O'Connor purports to allege against Defendants violations of the Fourth, Eighth, and Fourteenth Amendments, the Freedom of Information Act ("FOIA"), the Privacy Act, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Uniform Commercial Code ("UCC"), and Florida law.

The district court—adopting a magistrate judge's reasoned and detailed report and recommendation—dismissed O'Connor's complaint for failure to state a claim. We review *de novo* a district court's ruling on a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003). We construe liberally *pro se* pleadings. *Hughes v. Lott,* 350 F.3d 1157, 1160 (11th Cir.2003).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

1. The district court found implausible O'Connor's allegation that he was placed on strip-cell status just for disciplinary reasons. Accepting the allegations in O'Connor's complaint as true, O'Connor was being treated for mental illness, including "hallucinations, depression, homicidal and suicidal tendencies, paranoia, and other issues." While on suicide watch and self-harm observation status, O'Connor swallowed a razor blade and a paperclip, and shortly thereafter, was placed on strip-cell status by a prison psychologist and given only a "suicide shroud" to wear. In the light of these allegations, we agree that it seems implausible that O'Connor was placed on strip-cell status simply as punishment for assaulting an officer and not for his own protection and safety. But our ultimate decision does not hang on this observation.

liable for the misconduct alleged." *Id.* A complaint containing only "naked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quotations and alterations omitted). To avoid dismissal of his section 1983 claim, O'Connor must allege facts demonstrating that he was deprived of a constitutional right by a person acting under color of state law. *See Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1303 (11th Cir.2001).

Having reviewed the record and the parties' arguments on appeal, we agree with the district court's determination that O'Connor's sixth-amended complaint failed to state a claim for relief that was plausible on its face.[2] First, O'Connor failed to state an Eighth Amendment excessive force claim against Officer Morris. Accepting O'Connor's allegations as true, Morris did not go beyond *de minimis* force in struggling with and restraining O'Connor, and O'Connor alleged no discernable lasting injury.[3] *See Wilkins v. Gaddy,* 559 U.S. 34, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (citation and quotations omitted) (the Eighth Amendment prohibition on cruel and unusual punishment does not extend to *"de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim."). O'Connor also has alleged no facts sufficient to show that Morris restrained him with a malicious intention of causing harm instead of in a good-faith effort to maintain discipline. *See Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Because O'Connor failed to state a plausible Eighth Amendment claim against Officer Morris, his claims against Defendant officers for failing to intervene also fail.

O'Connor has also stated no plausible Eighth Amendment claim based on the time he spent on strip-cell status. Although "the Constitution does not mandate comfortable prisons," prison officials must "provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quotations omitted).

A prisoner challenging the conditions of his confinement must, among other things, "show a deprivation that is objectively, sufficiently serious, which means that the

**2.** As an initial matter, several of O'Connor's claims wholly lack merit and warrant little discussion. We agree with the district court's determination that O'Connor's claims for violations of FOIA, the Privacy Act, the ADA, the Rehabilitation Act, and the UCC necessarily fail as a matter of law. We reject O'Connor's Fourth Amendment claims (1) because Officer Kelley's alleged bite constituted no unlawful search and seizure within the meaning of the Fourth Amendment and (2) because O'Connor requested and consented voluntarily to a blood draw. We also reject without discussion—and for the reasons stated in the district court's order—O'Connor's claims (1) under the Eighth Amendment for failure to transfer him to a different facility, (2) under the Fourteenth Amendment for substantive due process violations, for filing false disciplinary reports, and for *Brady* violations, and (3) for compensatory and punitive damages.

**3.** We reject O'Connor's argument that he suffered a discernable injury, for purposes of our Eighth Amendment analysis, when the razor blade and paperclip pierced the inside of his stomach. O'Connor swallowed voluntarily these foreign objects and nothing evidences that Officer Morris knew about the presence of the foreign objects when he restrained O'Connor. Moreover, O'Connor alleges that the razor blade and paperclip pierced his stomach before, during, and after Officer Morris's restraint of him.

defendants' actions resulted in the denial of the minimal civilized measure of life's necessities." *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (quotations omitted). "The challenged condition must be 'extreme' ": the prisoner must show, at the very least, "that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir.2004) (quotation omitted). As part of our analysis, we must determine "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (emphasis in original). In evaluating an Eighth Amendment claim, we consider both the "severity" and the "duration" of the prisoner's exposure to extreme temperatures. *Id.* at 1295. Merely showing that prison conditions are uncomfortable is not enough. *Id.*

While we accept that O'Connor felt uncomfortably cold while on strip-cell status, O'Connor has alleged no facts demonstrating his exposure to "extreme" conditions. O'Connor alleges only that his cell was "cold" and that the cell floor was "cold" or "extremely cold." O'Connor alleges no details about the actual temperature of his cell or about the degree of cold he experienced. For example, O'Connor makes no allegation that ice formed in his cell. *Cf. Dixon v. Godinez,* 114 F.3d 640 (7th Cir. 1997) (prison officials were unentitled to summary judgment when they submitted no evidence rebutting the inmate's allegation that ice formed regularly on his cell walls); *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988) (reversing summary judgment in favor of prison officials where the inmate alleged that, for three months, he was exposed to temperatures so cold that iced formed in the toilet bowl of his cell).

O'Connor alleges that, as a result of his placement on strip-cell status, he suffered pain, swelling, itching, numbness in his feet and legs (including where a bullet was lodged in his leg), stomach pain, and headaches. But nothing evidences that O'Connor reported these medical problems to prison officials. O'Connor failed to allege that he was deprived of the "minimal civilized measure of life's necessities" or that the conditions of his confinement posed an unreasonable risk of serious harm to his future health or safety. *See Crosby,* 379 F.3d at 1289; *cf. McMahon v. Beard,* 583 F.2d 172, 175 (5th Cir.1978) (no constitutional violation when a pretrial detainee who had just attempted suicide was placed in a "strip cell" for 90 days without clothing, a mattress, sheets, or blankets).

The district court also committed no error in denying an injunction requiring the FDOC to provide O'Connor with adequate medical care. We review for abuse of discretion the district court's decision to deny an injunction. *CBS Broad. v. EchoStar Communs. Corp.,* 265 F.3d 1193, 1200 (11th Cir.2001). Under this standard, "we must affirm unless we at least determine that the district court has made a 'clear error of judgment,' or has applied an incorrect legal standard." *Id.*

For a district court to grant preliminary injunctive relief, a movant must show four elements including, in pertinent part, "a substantial likelihood of success on the merits" and that "the movant will suffer irreparable injury unless the injunction is issued." *Id.* "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements." *Id.* (quotation omitted).

In his motions for injunctive relief, O'Connor contends that he suffers "stomach and shoulder related problems," including severe stomach pain, cramps, bloody stools, acid reflux, regurgitation,

heartburn, indigestion, and sharp pain and numbness in his shoulders, neck, face, and hand as a result of the January 2010 incident. O'Connor also contends that he suffers from anxiety, fear, agitation, depression, stress, pain, anguish, and distress.

■ O'Connor's assertions about his injuries are vague and generalized. Moreover, O'Connor failed to demonstrate that he suffered—at the time he filed his motions in March 2011 and in December 2013—from injuries that needed *immediate* treatment, or that the lack of treatment would cause actual and imminent harm. Because O'Connor failed to demonstrate that he was likely to prevail on the merits of his substantive claims, or that he would suffer irreparable harm in the absence of injunctive relief, the district court abused no discretion in denying an injunction.

AFFIRMED.[4]

4. Having reached the merits of O'Connor's appeal, we need not address whether O'Connor should have been barred from proceeding *in forma pauperis* on appeal pursuant to the "three strikes" provision of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g).