┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 28, 2016[*]
Decided April 8, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1344

| | |
|---|---|
| DAVID R. BENTZ, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 12 C 10426 |
| MARCUS HARDY, et al., | |
| *Defendants-Appellees.* | Sharon Johnson Coleman, *Judge.* |

## O R D E R

For nearly half a year David Bentz, an Illinois inmate, was housed in a segregation cell at Stateville Correctional Center under conditions that, if Bentz is believed, were deplorable. He sued the warden, an assistant warden, and several guards under 42 U.S.C. § 1983, claiming that the conditions were cruel and unusual and that these defendants were responsible. Bentz brought additional claims against other defendants, but at screening, see 28 U.S.C. § 1915A, the district court directed Bentz to file separate lawsuits if he wished to pursue claims unrelated to the conditions in his segregation cell.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Bentz contends that the district court abused its discretion by doing so, but we reject this argument. See *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "unrelated claims against different defendants belong in different suits").)[1] The district court granted summary judgment for the defendants, reasoning that Bentz had "experienced considerable unpleasantness" but "suffered no physical harm." We reject this view of the evidence and remand for further proceedings.

After the defendants had moved for summary judgment, Bentz did not respond properly to their statement of uncontested facts. See N.D. ILL. L.R. 56.1. That misstep was not fatal, however, because the defendants principally relied upon Bentz's discovery deposition as their source of evidence. Thus his account of the conditions he endured in segregation is undisputed, and in any event we review the evidence in the light most favorable to Bentz, the opponent of summary judgment. See *Dawson v. Brown*, 803 F.3d 829, 832 (7th Cir. 2015).

What the evidence shows is that Bentz was confined in a segregation cell from March through August 2010. Throughout that time a large casement window (about 4' high by 2' wide, Bentz guesses) was stuck open by a foot, exposing him to the cold. Rain came in through the open window, running down the wall and leaving puddles on the floor. The ceiling also leaked whenever it rained, soaking the mattress on the top bunk (though Bentz usually slept on the bottom bunk if he did not have a cellmate). The wall switch for the light was directly under the window and exposed to rainwater, and several times Bentz received a minor shock when he touched it. The toilet also was on the same wall as the window, and if Bentz had to use the toilet when it was raining, he

---

[1] The defendants argue that we lack appellate jurisdiction because Bentz's notice of appeal was received by the clerk of the district court 31 days after entry of judgment, or one day after it was due. See FED. R. APP. P. 4(a)(1). They argue that, even though Bentz placed his notice of appeal in the mail at Stateville three days before it was due, he is not entitled to the benefit of the prison mailbox rule because he did not declare that first-class postage was prepaid. See FED. R. APP. P. 4(c)(1); *Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007). But this overly literal reading of the rule makes little sense because, in this case, the record contains the envelope Bentz used to mail his notice of appeal. On that envelope is a first-class postage stamp, as well the date that the United States Postal Service received it (two days before it was due). Thus Bentz is entitled to the benefit of the prison mailbox rule, and his appeal is timely.

would get wet. Cockroaches and earwigs infested the cell, crawling on Bentz at night and preventing him from sleeping. The cell was filthy, with paint and plaster falling from the walls. The cold water faucet barely worked, and the metal stool he was given to sit on was rusty with sharp edges.

On appeal Bentz explicitly abandons his Eighth Amendment claim against one of the guards, but he presses forward with respect to the other four defendants. We reject the district court's conclusion that a jury could not reasonably find for Bentz on these facts. To the contrary, we conclude that a jury could find, based on the undisputed evidence, that the conditions Bentz endured—at least in combination, if not alone—rose to the level of an Eighth Amendment violation. We are particularly disturbed by the broken window's effect on the segregation cell's temperature during the first few months of Bentz's confinement. Stateville is located in northern Illinois, where temperatures in the 30s are common even in March and April. Even by Bentz's undisputed estimates, he was subjected to temperatures in his cell below 50 degrees (and sometimes more than 90 degrees). Exposure to cold temperatures over an extended period can constitute cruel and unusual treatment. See *Dixon v. Godinez*, 114 F.3d 640, 643–45 (7th Cir. 1997) (vacating grant of summary judgment to defendants on claim that failure to heat cell to temperature that exceeded forty degrees violated Eighth Amendment); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987) (vacating grant of summary judgment to defendants when factual dispute existed whether cell temperature fell below 52 or 54 degrees).

The defendants insist that the cold alone was insufficient to constitute a violation because, they point out, Bentz was given clothes and a blanket to mitigate the cold. We do not understand this contention; *every* inmate at Stateville is given two t-shirts, two pairs of pants, two pairs of socks, sheets, a pillow case, and one blanket—exactly what Bentz received. The salient point is that Bentz did not receive *extra* clothes or blankets after he was moved into the segregation cell with the broken window, and so, in fact, the defendants did not compensate *at all* for the cold. Rather, at summary judgment the defendants argued that Bentz could have used his commissary account to *buy* more clothes or blankets if he was not warm enough.

Even if selling an inmate protection against the cold can be characterized as a permissible remedy, we have explained that not every effort to compensate for inadequate heat will suffice to evade liability under the Eighth Amendment. That is because "whether the severity of the cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the Eighth Amendment is [a

question] which will often be peculiarly appropriate for resolution by the trier of facts." *Dixon*, 114 F.3d at 643. Moreover, when it was necessary for Bentz to use the upper bunk soaked by rainwater, we doubt that his clothing and blanket provided much relief from the cold. See *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (noting that some "mutually enforcing" conditions in combination may constitute Eighth Amendment violation when each alone would not do so); *Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). The defendants also argue that Bentz did not suffer any physical illness as a result of his cold cell, but such a showing is not necessary. See *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001); *Dixon*, 114 F.3d at 644.

Beyond being cold, Bentz's segregation cell had a light switch that was an electrical hazard because of the water, and the cell was so infested with cockroaches and earwigs that, despite Bentz's killing nearly 50 a day, the insects continued to crawl on him at night, keeping him awake. The defendants make much of the fact that Stateville employed a pest control company to spray for bugs once each month. But evidence of a pest control contract alone does not necessarily exculpate the defendants since persisting in an ineffective method of pest control may be evidence of deliberate indifference. See *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (concluding that plaintiff could not prevail on claim of deliberate indifference where defendant had exterminated monthly and also at plaintiff's request when plaintiff "often saw several cockroaches crawling in his cell"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (rejecting argument that pest control contract was sufficient evidence to defeat deliberate indifference claim where plaintiff claimed that cockroaches were "everywhere," "crawling on his body" and "constantly awakening him."). The monthly sprayings may have been rendered entirely ineffective by the broken window, which not only invited in more pests, but caused standing water in the cell, an enticing feature to both cockroaches and earwigs.

The defendants also argue that Bentz could not have suffered an Eighth Amendment violation because the insects "never bit or harmed him," yet depending upon the extent, duration, and kind of infestation an inmate was made to endure, a trier of fact still may reasonably find that an Eighth Amendment violation occurred even without a showing of physical harm. See *Thomas v. Illinois,* 697 F.3d 612, 614 (7th Cir. 2012) (explaining that "a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment even if he had not contracted a disease or suffered any physical pain"); *Walker v. Schult*, 717 F.3d 119, 126 (2nd Cir. 2013) (noting that "sleep is critical to human existence and conditions that prevent sleep have been held to violate the Eighth Amendment"). Similarly, prison officials who recklessly expose a prisoner to a substantial risk of

physical injury—*e.g.*, an electrical circuit exposed to rainwater—violate the Eighth Amendment even if no physical injury actually results, and are subject to nominal and punitive damages. See *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

A jury should have been permitted to decide if the conditions that Bentz endured for six months at Stateville constituted cruel and unusual punishment. That claim must be remanded. We have reviewed Bentz's other arguments, and none has merit. The judgment in favor of Marcus Hardy, Randy Pfister, Louis Kovach, and Anthony Robinson is VACATED, and the case is REMANDED for further proceedings consistent with this decision. The judgment in favor of Cynthia Harris is AFFIRMED.