NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 12, 2017[*]
Decided May 12, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-3646

| | |
|---|---|
| PAUL CHATMAN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 16-CV-1184 |
| | |
| ILLINOIS DEPARTMENT OF | Joe Billy McDade, |
| CORRECTIONS, et al., | *Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Paul Chatman, a prisoner at Illinois River Correctional Center, claims in this suit under 42 U.S.C. § 1983 that Department of Corrections employees violated the Eighth

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. We have agreed to decide this case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Amendment during a shakedown of his cellblock. Chatman alleges that he was subjected to a humiliating strip search, ridiculed and violently shoved by guards, handcuffed outdoors for 90 minutes in freezing weather without adequate clothing, and denied cleaning supplies for his cell after guards urinated on the floor and toilet. The district court dismissed the suit at screening, *see* 28 U.S.C. § 1915A, reasoning that Chatman's allegations fail to state a constitutional claim. We disagree with this conclusion and remand for the suit to proceed.

For purposes of this appeal, we take as true Chatman's allegations, including statements in his appellate brief that are consistent with his complaint. *See Smith v. Knox Cnty Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012). On April 30, 2014, more than 200 guards assigned to tactical units from Illinois River and other prisons—teams known by the color of their jumpsuits as "Orange Crush"—descended on Chatman's cellblock. A shakedown had been prescheduled, so the tactical teams were not responding to an emergency situation. Yet beginning at 8:00 a.m. Chatman and about 50 other inmates were herded into a gated shower and, without any legitimate reason, strip-searched individually by one of the defendants, a sergeant, in view of other prisoners and female guards. During this search Chatman was forced to manipulate his buttocks and genitals before being told to use his hands to hold open his mouth without an opportunity to wash them first. After this search he was allowed to partially dress but forbidden to put on his underwear, T-shirt, or socks. He was then forced to walk between a "phalanx" of Orange Crush members while some violently pushed his head down and others shouted taunts like, "You all deserve this."

That march ended outdoors in the prison yard, Chatman continues, where he and the other inmates—none with coats—were made to stand while handcuffed to a metal gate, close enough that Chatman's skin adhered to the cold surface. For 90 minutes he remained outside in 30-degree weather with strong winds buffeting his face and body and the handcuffs causing pain in his shoulders. The last 60 minutes of this "agonizing frigid ordeal" was made worse by wind-blown water from a fire hydrant that a prison employee had opened. Chatman heard one sergeant say to another guard, "Hey, you know it's cold out there?" and heard someone reply, "They can deal with it." The "bone chilling cold" aggravated Chatman's asthma and caused him difficulty breathing. When he complained to the guards, another of the defendants, also a sergeant, replied, "Shut up, I don't care." A third defendant, again a sergeant, walked into the yard several times observing, even asking if the guards posted there needed assistance.

Chatman finally was led back to his cell but for another 40 minutes experienced chills. The cell now smelled of urine that was visible on the toilet and floor, from which Chatman concluded that guards had urinated in his cell to vandalize his living quarters. He asked for materials to clean up the mess, but that request was refused.

Chatman submitted a number of grievances, and after hearing nothing from the grievance officer, he filed this action in April 2016, just before the statute of limitations would run. He named as defendants the three sergeants, as well as the warden and several lieutenants who allegedly knew about, but did not stop, the actions of their subordinates. In concluding that no claim is stated by Chatman's factual allegations—which, again, at this stage we must take as truthful—the district court reasoned that Chatman's complaint lacks sufficient detail from which to plausibly infer that the Eighth Amendment was violated by the manner in which he was strip-searched and held in the prison yard. We do not agree.

Illinois River is just one of six prisons rousted by Orange Crush units in the spring of 2014, and, by our count, 27 pending lawsuits, including Chatman's, allege similar conduct by team members during these shakedowns. At least three cases similar to Chatman's already had survived § 1915A screening in the Central District of Illinois before Chatman's was dismissed. *See Blakes v. Godinez*, No. 16-CV-3107, 2016 WL 3976537 (C.D. Ill. July 22, 2016) (screening decision); *Ephrain v. Gossett*, No. 15-CV-3359, 2016 WL 3390659 (C.D. Ill. June 17, 2016) (screening decision); *Ebmeyer v. Yurkovich*, No. 16-4056, 2016 WL 3093353 (C.D. Ill. June 1, 2016) (screening decision). And 20 other suits in the Southern District of Illinois have been consolidated with a counseled case currently under consideration for class certification. *See Ross v. Gossett*, No. 15-CV-309-SMY-PMF (S.D. Ill. filed March 19, 2015). Chatman's account of events is on par with the allegations in these other suits, and we agree with him that his case also warrants an answer from the defendants.

The district court viewed Chatman's complaint as presenting distinct claims arising from the strip search and his confinement in the prison yard. But the conduct he describes occurred sequentially in a few short hours, and it is more appropriate to see his allegations as a single course of conduct involving the manner in which the shakedown was conducted. Chatman alleges that he was unnecessarily subjected to a degrading strip search in view of female guards and others, paraded outside into frigid weather while being violently shoved and taunted, shackled and forced to stand for 90 minutes in clothing unsuitable for the cold, told to "shut up" when he tried to alert guards that the cold was making it difficult to breathe, and denied cleaning

supplies for his cell after guards vandalized it with urine. Prison authorities violate the Eighth Amendment when they treat inmates in a way that is "motivated by a desire to harass or humiliate" or "intended to humiliate and cause psychological pain." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *see Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (vacating § 1915A dismissal of male prisoner's Eighth Amendment claim that he was strip-searched in view of female guards in a humiliating manner). Chatman's allegations, read together and construed liberally, surely suggest that the defendants engaged in gratuitous degrading conduct.

The district court's reasons for concluding differently are flawed. For one, concerning Chatman's confinement outdoors, the court thought it significant that he doesn't allege lasting physical harm from his ordeal, but an enduring, or even prolonged, injury is not a necessary element of his Eighth Amendment claim. *See Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) ("Cold temperatures need not imminently threaten inmates' health to violate the Eighth Amendment."); *Del Raine v. Williford*, 32 F.3d 1024, 1031, 1034 (7th Cir. 1994) (concluding that even short exposure to bitter cold may violate Eighth Amendment). The district court also reasoned that Chatman's allegations do not plausibly suggest that the defendants lacked a legitimate penological reason for shackling him outside in the cold. To the contrary, we have difficulty imagining a legitimate reason for taking prisoners outside in freezing, windy weather without letting them don coats or even put on all the clothes they were wearing before they were searched and then dousing them with water while they stand handcuffed to a fence incapable of warming themselves or even getting out of the path of the wind-blown water. As Chatman observes, the shakedown was *scheduled*, not conducted under extenuating circumstances, eroding further any possible inference that what happened to the inmates outside in the yard was necessary or acceptable. The defendants may dispute some of Chatman's allegations. Or perhaps they will articulate a latent but justifiable reason for their actions, and, if so, the burden will shift to Chatman to call that explanation into question. *See Mays*, 575 F.3d at 647. But at this stage Chatman's allegations suffice to state an Eighth Amendment claim.

That is true, too, about the strip search. The district court faulted Chatman for not including in his complaint more details concerning the manner in which the strip search was conducted and the length of time he was denied cleaning supplies. Yet a complaint requires only a "short and plain statement," not details, FED. R. CIV. P. 8(a)(2), and Chatman's complaint says more than enough from which to plausibly infer that this was not an ordinary strip search. *See Mays*, 575 F.3d at 649–50; *Calhoun*,

319 F.3d at 939; *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987). Moreover, if a pro se complaint really is too sparse, the district court should allow the plaintiff to amend to cure the perceived deficiency before dismissing the action with prejudice. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007). That did not happen here.

Accordingly, the judgment dismissing Chatman's lawsuit is **VACATED**, and the case is **REMANDED** for further proceedings. Given this result Chatman has not incurred any strikes for this litigation. *See* 28 U.S.C. § 1915(g). On remand Chatman shall be permitted, if he chooses, to amend his complaint "once as a matter of course" and thereafter as justice requires. *See* FED. R. CIV. P. 15(a).