FILED
United States Court of Appeals
Tenth Circuit

November 3, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN A. SKELTON,

      Plaintiff - Appellant,

v.

LOUIS BRUCE, Warden, Hutchinson
Correctional Facility; MARJORIE
VANHOOSE, Unit Manager,
Hutchinson Correctional Facility;
DEBRA MCCONAGHY, Unit Team
Member, Hutchinson Correctional
Facility; MISTY KROEKER, Unit
Team Member, Hutchinson
Correctional Facility; THOMAS
MACK, Unit Team Member,
Hutchinson Correctional Facility;
RUDY RODRIGUEZ, Unit Team
Member, Hutchinson Correctional
Facility; ANTHONY MCELROY, Unit
Team Member, Hutchinson
Correctional Facility; JASON
HARDING, Sargent, Security Force of
Segregation Units, Hutchinson
Correctional Facility,

      Defendants - Appellees.

No. 09-3348
(D.C. No. 5:06-CV-03045-MLB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

_____

In this conditions of confinement case, Plaintiff-Appellant John Skelton appeals from an order of the district court granting summary judgment in favor of Defendants-Appellees corrections officials. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

Mr. Skelton was at all times relevant to this case an inmate at Hutchinson Correctional Facility ("HCF") in Hutchinson, Kansas. 1 Supp. R., Amended Pretrial Order, Doc. 121 ¶ 4(a)(1). All Defendants were employed by HCF. Specifically, Defendant Louis Bruce was the warden of HCF. Id. ¶ 4(a)(2). Defendant Misti Kroeker was a Unit Team Counselor II assigned to A Cellhouse. Ex. E, Kroeker Affidavit, Doc. 127-5 at 1. Defendant Marge VanHoose was the Unit Team Manager assigned to A Cellhouse. Ex. C, VanHoose Affidavit, Doc. 127-3 at 1. Defendant Anthony McElroy was a Unit Team Counselor in the Intensive Management Unit in A-3 Cellhouse. Ex. HH, McConaghy Deposition, Doc. 127-32 at 33.

Mr. Skelton was housed in the segregation unit at HCF in A Cellhouse from November 24, 2003 until March 24, 2004 and from July 24, 2005 until November 4, 2005. 1 Supp. R., Amended Pretrial Order, Doc 121 ¶ 4(a)(5). He is currently

housed at a different facility. Ex. A, Skelton Deposition, Doc. 127-2 at 146. Mr. Skelton filed several grievances concerning the conditions of confinement while he was in the segregation unit. On February 25, 2004, he filed a grievance complaining about the cold temperature in his cell. Ex. J., Grievance BA00011628, Doc. 127-9 at 2-4. On March 16, 2004, he filed a grievance complaining about the cold air and water temperatures in the showers and the use of fan vents by officers while inmates showered. Ex. K, Grievance BA 00011668, Doc. 127-10 at 3-5. On March 21, 2004, he filed a grievance complaining that the outdoor segregation exercise yard was not covered and that inmates were not given gloves or rain gear. Ex. L, Doc. 127-11, Grievance BA00011691 at 3-7. Defendant Kroeker denied all three grievances, and Defendant Bruce concurred with her decisions. Ex. J., Grievance BA00011628, Doc. 127-9 at 1, 5; Ex. K, Grievance BA 00011668, Doc. 127-10 at 1, 6; Ex. L, Doc. 127-11, Grievance BA00011691 at 1, 8-9.

On February 7, 2006, Mr. Skelton filed a pro se civil rights action in Kansas federal district court against several HCF employees alleging violations of his Eighth Amendment rights. 1 R. Doc. 1. Counsel was appointed on January 24, 2008, 2 R. Doc. 93, and Defendants moved for summary judgment on February 20, 2009. 2 R. Doc. 126. The district court granted Defendants' motion for summary judgment on November 12, 2009. 3 R. Doc. 140.

On appeal, Mr. Skelton maintains that the cold temperature in his cell, the

cold air and water and use of fans in the showers, and lack of appropriate clothing and shelter in the outdoor exercise area violated his Eighth Amendment rights.[1] Specifically, Mr. Skelton alleges that Defendants Bruce and VanHoose violated his Eighth Amendment rights "by creating, allowing to be created, implementing, and/or allowing to be implemented rules, regulations, policies, practices, procedures, patterns, decisions, instructions, orders, and customs regarding exercise for segregation inmates at HCF (Count 1); regarding the temperature in the intensive management unit at HCF (Count 5); [and] regarding the temperature in the segregation unit at HCF (Count 6)." 1 Supp. R., Amended Pretrial Order, Doc. 121 ¶ 6(a)(2)(a) & (b). In addition, he alleges that Defendant Kroeker violated his Eighth Amendment rights "by being deliberately indifferent to plaintiff's health or safety regarding air and water temperatures in the showers in the cells of the intensive management unit at HCF (Count 5); regarding air temperatures of the intensive management unit at HCF (Count 6); and regarding exercise opportunities for inmates in the segregation unit at HCF (Count 8)." Id. ¶ 6(a)(2)(c).[2]

---

[1] Mr. Skelton originally included additional claims, but the only claims on appeal concern the cold cell temperature, the shower conditions, and the lack of clothing and covering for the segregation yard.

[2] Although Defendant McElroy has not been formally dropped as a defendant, the claims against him pertained to Mr. Skelton's complaints about sock supply, which have been dropped. See 1 Supp. R., Amended Pretrial Order, Doc. 121 ¶ 6(a)(2)(d) (describing allegations against Defendant McElroy); Aplt. Reply Br. at 23-24 (explaining decision to drop claims regarding socks).

Mr. Skelton seeks nominal damages, attorney's fees, costs, and injunctive relief requiring HCF to maintain air and water temperature at a certain range in the segregation units at HCF; provide adequate and warm clothing to inmates including hats, gloves, thermal underwear, and hooded sweatshirts to those using the outdoor exercise area; and construct a partial roof over the outdoor exercise area. See Aplt. Br. at 16.

## Discussion

This court reviews orders granting summary judgment de novo. See Howard v. Waide, 534 F.3d 1227, 1235 (10th Cir. 2008). Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In reviewing an order of summary judgment, we "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty., 546 F.3d 1299, 1306 (10th Cir. 2008) (quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Mr. Skelton brings his claims under section 1983, alleging Eighth Amendment violations based on the conditions of his confinement. "To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must establish the defendant acted under color of state law and caused or contributed to the alleged violation." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (citation omitted). In an Eighth Amendment conditions of confinement claim, a plaintiff must show an objective and subjective component. "First, the deprivation alleged must be, objectively, sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of deliberate indifference to inmate health or safety." Id. (quotation marks and citations omitted).

Regarding the objective component, the Eighth Amendment does not require comfortable prisons at the expense of management prerogative, and conditions may be restrictive or even harsh. See Barney v. Pulsipher, 143 F.3d 1299, 1311 (10th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). Still, prison officials must provide "'the minimal civilized measure of life's necessities'" based upon contemporary standards. Id. at 1310 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Against that backdrop, the Eighth Amendment requires that a state "provide [an inmate] reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold

water, light, heat, plumbing)." Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981) (citations omitted). To prove an unconstitutional deprivation, "a prisoner must show that conditions were more than uncomfortable, and indeed rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety." DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001) (quoting Farmer, 511 U.S. at 834). Whether there is a substantial risk of serious harm depends on "the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." Id. at 974 (quotation marks and citations omitted). "[T]he length of exposure to the conditions is often of prime importance." Id.

The subjective component of an Eighth Amendment conditions of confinement claim is not satisfied "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. With this framework in mind, we address Mr. Skelton's three claims.

1.      Cell Temperature

In his first grievance, Mr. Skelton complained that from November 24,

2003 to December 15, 2003 and January 28, 2004 to February 25, 2004, he subjectively believed that the temperature in his cell ranged from "40 degrees to 65 degrees," and at night, it "dropped to an almost unbearable low." Ex. J., Grievance BA00011628, Doc. 127-9 at 3. In his December 22, 2008 deposition, he stated that based on "subjective experience," the segregation cells was kept 10 to 20 degrees cooler than the population cells and that an officer on duty agreed with him that the temperature was cold but could not be changed because the temperature was preset. Ex. A, Skelton Deposition, Doc. 127 at 41:3-11, 42:2-18. Later in his deposition, he stated that he thought the temperature was 20 or 30 degrees. Id. at 46:5-6. He also stated that "I'm not saying that it was real cold every day, but there would be large segments of time where it would be cold." Id. at 47:17-23. He assumed the cold conditions were based on a heater malfunction or a broken window. Id.

On March 1, 2004, Defendant Kroeker denied the grievance after the maintenance staff told her that the preset temperature was 68 degrees and that at 10 A.M. on February 25, the temperature was 70 degrees on the south side of the cellhouse and 67.5 degrees on the north side. Ex. J., Grievance BA00011628, Doc. 127-9 at 5. Defendant Bruce concurred with the decision. Id. at 1. In his deposition, Mr. Skelton testified that he had requested temperature checks for various times during the day but that Defendant Kroeker "took one temperature check during the day at a time when I know that they have the heaters kicked on."

Ex. A, Skelton Deposition, Doc 127 at 44:9-18. In an affidavit, Kroeker stated that the maintenance department kept a log of temperatures in the cellhouses, but had lost that information. Ex. E, Doc. 127-5, Kroeker Affidavit at 1.

Mr. Skelton alleges that Defendants Bruce and VanHoose violated his Eighth Amendment rights by creating policies that kept the cell temperatures too low and that Defendant Kroeker violated his Eighth Amendment rights by being deliberately indifferent to his health and safety. 1 R., Amended Pretrial Order, Doc. 121 ¶ 6(a)(2)(a)-(c). The district court held that Mr. Skelton provided no evidence to support his claim regarding the cold cell temperature. 3 R., Doc. 140 at 12.

An allegation of inadequate heating may amount to a constitutional violation, see Ramos, 639 F.2d at 568, but we must consider the severity of the temperature, its duration, and whether the inmate has adequate alternatives to protect himself from the cold, along with other prison conditions. See Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997); see also Wilson, 501 U.S. at 304 (noting that "a low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation); Mitchell v. Maynard, 80 F.3d 1433, 1443 (10th Cir. 1996) (finding actionable Eighth Amendment claim where inmate alleged lack of heat, lack of bedding and clothing, deprivation of exercise for a long period of time, lack of hot water, denial of toilet paper, removal of prescription eyeglasses, and lack of adequate ventilation); Dixon, 114

- 9 -

F.3d at 643 ("It is true that most successful Eighth Amendment claims often involve allegations of cold in conjunction with other serious problems."). Here, we cannot agree with the district court that "no evidence" supports the cold cell claim. As discussed above, Mr. Skelton alleged cold cell temperatures within a range that certainly could be problematic for an extended period of time. At the same time, and as the district court noted, Mr. Skelton has not claimed that he was deprived of a blanket or clothing in his cell.[3] 3 R., Doc. 140 at 13. Indeed, he seemed to take the position in his grievance that the cell should be warm enough as to not require a blanket. See Ex. J., Grievance BA00011628, Doc. 127-9 at 3 ("[I]t is ridiculous that inmates cannot move about their cell without wearing a coat or blanket."). We agree with the Seventh Circuit that the fact that inmates need to bundle up in a coat and blanket does not necessarily mean that the prison conditions are unconstitutional. See Dixon, 114 F.3d at 644 ("[J]ust because low temperature forces a prisoner to bundle up indoors during the winter does not mean that prison conditions violate the Eighth Amendment.").

Still, the Dixon court held that there was a genuine issue of material fact where the inmate complained that ice persistently formed on the walls of his cell for several winters and the extreme cold made it impossible to do simple tasks,

---

[3] In his deposition, Mr. Skelton claimed that "[t]echnically, you are supposed to have two [blankets] during the wintertime, but at that time I was only able to get one." Ex. A, Doc. 127-1 at 46:24-47:1. He claimed that he requested a second blanket, but he never made a formal request for one and never filed a grievance about this. See id. at 47:9-12.

such as writing a letter or doing legal work.  See 114 F.3d at 644; see also Lewis v. Lane, 816 F.2d 1165, 1171 (7th Cir. 1987) (finding genuine issue of material fact where prison inmate claimed that cell temperatures fell between 52 and 54 degrees even though prison officials maintained the temperature was set to a range of 68 to 72 degrees).

We need not decide whether Mr. Skelton has produced sufficient evidence to preclude summary judgment on the objective prong of the Eighth Amendment, because even assuming he has, we hold that he has not produced sufficient evidence for a rational jury to hold that the Defendants were deliberately indifferent to his health or safety.  Under Farmer, prison officials are free from liability if they respond reasonably to the risk to inmates.  See 511 U.S. at 844. Defendant Kroeker responded to Mr. Skelton's grievance by checking the temperature with maintenance and confirming that the heater had been set to 68 degrees.  While we recognize that Mr. Skelton complains of nighttime temperature drops and that a single temperature check was performed during the day, we will not hold prison officials liable for what would at most amount to mere negligence.  See id. at 835.  Mr. Skelton's allegation that the temperature check was a sham is pure speculation and does not raise a genuine issue of material fact that Defendant Kroeker acted with deliberate indifference.

Mr. Skelton contends that the cold conditions in his cell were caused by policies set by Defendants Bruce and VanHoose.  The HCF regulations, however,

state that the cell temperature is to be set at 68 degrees during winter. Ex. FF, Doc 127-30 at 2. Mr. Skelton has failed to raise a genuine issue of material fact as to whether Defendants Bruce and VanHoose acted with deliberate indifference.

2.      Shower Conditions

In his second grievance, Mr. Skelton complained about the cold air and water temperatures in the showers and the use of fan vents as punishment. Ex. K, Doc. 127-10, Grievance BA 00011668 at 2-5. Specifically, Mr. Skelton argued that the air temperature was 68 degrees, the water temperature was "barely above body temperature," and the fan created a draft in the showers that "caused severe distress from the cold and was enough to cause a hypothermic reaction in [his] body temperature." Id. at 4. Defendant Kroeker testified that officers frequently used fans to clear steam in the showers for security purposes and to control the growth of mold in the showers. Ex. E, Doc. 127-5, Kroeker Affidavit at 2. Mr. Skelton alleged that on March 16, there was no steam and that Officer Curtis (who is not a defendant here) maliciously used the fan as "an inmate management tool, knowing that it causes pain and detriment." Ex. K, Doc. 127-10, Grievance BA 00011668 at 5. In an affidavit, Mr. Skelton also stated that "[t]he use of fans in the shower area was never a necessary security precaution in order to remove steam and provide a line of sight for guards overseeing the area. In view of the water temperature, steam never became an issue." Ex. NN, Skelton Affidavit, Doc. 131-1 at 3. Mr. Skelton admitted that the incident with Officer Curtis was

"the only time that I felt that [the fan] was being used maliciously" and that "[t]he other times, the other officers I'm sure were under some sort of directive, as later learned by the unit team that the fans were to be used to prevent mold . . . ." Ex. A, Skelton Deposition, Doc. 127-1 at 36:12-16. In his grievance, he requested that the officers be trained so that they would not use the fans as punishment. Ex. K, Doc. 127-10, Grievance BA 00011668 at 5.

In his deposition, officer John Montoya stated that "[i]t seemed like [the inmates] always complained about the water. That was an ongoing problem." 3 R., Ex. RR, Doc. 131-5 at 24:13-14. In addition, he stated that corrective actions to increase the heat were not always taken because of "the money crunch." Id. at 26:1-11.

Noting that the water temperature had been raised on March 11 and that the fans were used to address steam and humidity issues, Defendant Kroeker denied the grievance and found no reason to train the officers. Ex. K, Doc. 127-10, Grievance BA 00011668 at 6. Defendant Bruce concurred. Id. at 1. HCF policy requires that showers be maintained at 110 degrees. Ex. FF, Doc. 127-30 at 2. Defendant Kroeker stated, however, that "the water temperatures do vary somewhat when the devices that mix hot and cold water do not function as designed." Ex. E, Doc 127-5, Kroeker Affidavit at 2. She also stated that temperatures in the shower area were never taken. 3 R., Ex. VV, Doc. 131-8 at 50:3-19.

Mr. Skelton contends that Defendants Bruce and VanHoose violated his Eighth Amendment rights by creating policies regarding the air and water temperatures in the shower and that Defendant Kroeker violated his Eighth Amendment rights by being deliberately indifferent to his health and safety in the shower. 1 R., Amended Pretrial Order, Doc. 121 ¶ 6(a)(2)(a)-(c). The district court held that the facts failed to show that the conditions were sufficiently severe to constitute an Eighth Amendment violation.

Prisons are required to provide inmates with hot and cold water, see Ramos, 639 F.2d at 568, but we held, in an unpublished order and judgment, that there was no Eighth Amendment violation where inmates were forced to use showers that "produced water sometimes too hot and other times too cold." See Rhodes v. Laramie Cnty. Bd. of Cnty. Com'rs, No. 94-8046, 1995 WL 539739, at *1 (Sept. 12, 1995) (unpublished).[4] Relying upon that order and judgment, the district court implied that there could be no constitutional violation where the showers were equipped to produce hot water but sometimes malfunctioned. 3 R., Doc. 140 at 13-14.

Even assuming without deciding that the shower temperatures could meet the objective component of the Eighth Amendment standard, Mr. Skelton has failed to produce evidence that the Defendants were deliberately indifferent.

---

[4] Unpublished decisions are not binding precedent, but may be cited for persuasive value. See 10th Cir. R. 32.1(A).

Defendant Kroeker responded reasonably to Mr. Skelton's grievance by stating that the water temperatures had been raised. In addition, Mr. Skelton fails to show that Defendants Bruce and VanHoose set an unconstitutional policy because the HCF regulations state that shower water should be maintained at 110 degrees.

In addition, we agree with the district court that one occasion of alleged malicious fan use does not meet the objective prong of the Eighth Amendment standard. Mr. Skelton stated that March 16 was the only time that an officer maliciously used a fan on him. One occasion of malicious fan use does not create a condition posing a "substantial risk of serious harm to inmate health or safety." DeSpain, 264 F.3d at 973 (quotation marks and citation omitted).

3.     Exercise Yard Conditions

In Mr. Skelton's third grievance, he complained about the lack of gloves, rain gear, and outdoor covering in the segregation exercise area during the winter months. Ex. L, Doc. 127-11, Grievance BA00011691 at 3-7. Inmates in the segregation unit are given the option to exercise in an uncovered outdoor yard for one hour five days a week. Barring inclement weather, once the exercise period begins, inmates are not permitted to re-enter the cellhouse until the end of the hour-long period "in order to maintain security and adequate staff supervision." Ex. CC, Doc. 127-27, Kroeker Affidavit at 2. If inclement weather starts once the exercise period has begun, inmates are permitted to re-enter the facility as a group at the discretion of the officers on duty. Id. Officer Rudy Rodriguez testified

that inmates in segregation are under "special management," which requires a "more intense moving of the inmate population," and that once inmates decide to go outside, they are not permitted back inside unless there is lightning. 3 R., Ex. JJ, Doc. 131-7, Rodriguez Deposition. Inmates are told the weather conditions prior to going outside and have the option to remain in their cells, where they can exercise according to a program provided by an activity therapist at HCF. Id. In his grievance, Mr. Skelton complained that he was unable to do the indoor exercise program because his cell was too small. Ex. L, Doc. 127-11, Grievance BA00011691 at 6.

All inmates are given a denim jacket with wool lining before going outside; some are given stocking caps. Ex. A, Doc 127 at 20:12-20. Officer John Montoya testified that inmates were never given hooded sweatshirts, sweatpants, gloves, or rain gear before entering the exercise yard. 3 R., Doc. 131-5, Montoya Deposition at 17:17-18:5. The yard is not covered.

Mr. Skelton testified that "we didn't have enough clothing to stay warm. And the fact of the cold was exacerbated when it snowed and rained." Ex. A, Skelton Deposition, Doc. 127-1 at 24:2-4. He described four occasions where the clothing provided was not sufficient to protect him from snow or rain. On one occasion, freezing rain started about 30 minutes into the hour-long exercise period, and the officers on duty refused to allow Mr. Skelton back inside despite Mr. Skelton's request. Id at 25:21-25:10. Mr. Skelton wrote in his grievance that

- 16 -

he was "soaked and frozen when he came back in" and that "his feet, hands, and legs burned and itched fiercely when [he] was able to take a shower." Ex. L, Doc. 127-11, Grievance BA00011691 at 5. On two occasions, it snowed while Mr. Skelton was outside. One time, Mr. Skelton chose to go outside after the officers had told him it was snowing. Ex. A, Skelton Deposition, Doc. 127-1 at 27:1-14. The other time, the snow began after Mr. Skelton decided to go outside, but he did not ask to come back in because he assumed the officers would not allow it. Id. at 27:17-28:2. On one last occasion, it began to rain and sleet forty minutes into the exercise hour, and the officers refused to allow Mr. Skelton inside. Id. at 28:18-29:2. Mr. Skelton did not seek medical care after any of these incidents, Id. at 32:16-33:2, but he stated in response to an interrogatory that he:

> suffered extreme coldness and chills and resultant health and rest and sleep difficulties because of these actions and failures. Furthermore, due to his diabetic condition, Mr. Skelton needed exercise to avoid excessive levels of blood sugar. The exercise was an important component of his therapy. He had worries about the conflict between the need to exercise and the adverse effects of the inclement weather. All of this made it much more difficult for him to maintain his health—past, present, and future.

Ex. GG, Doc. 127-31, Skelton Response to Interrogatories at 5.

On March 31, 2004, Defendant Kroeker denied Mr. Skelton's grievance, stating that "it is not fiscally possible for the facility to invest in building another indoor exercise area or to place rooves [sic] over the disciplinary segregation yard

area" and that "[t]here is no plan to issue gloves and/or rain gear to segregation inmates for use during yard periods." Ex. L, Doc. 127-11, Grievance BA00011691 at 8, 9. Defendant Bruce concurred with her denial. Id. at 1. Mr. Skelton alleges that Defendants Bruce and VanHoose violated his Eighth Amendment rights by creating the policies regarding the exercise yard and that Defendant Kroeker violated his Eight Amendment rights by being deliberately indifferent to his health and safety regarding exercise opportunities for inmates in segregation. 1 R., Doc. 121, Amended Pretrial Order ¶ 6(a)(2)(a)-(c). The district court granted summary judgment for the Defendants, holding that Mr. Skelton's minimal exposure to the elements without gloves and a hat did not amount to an Eighth Amendment violation. 3 R., Doc. 140 at 16.

We have held that the Eighth Amendment requires humane living conditions, including adequate clothing and shelter. See Barney v. Pulsipher, 143 F.3d at 1310 (citing Farmer, 511 U.S. at 832-33). Other circuits have found Eighth Amendment violations where inmates were forced to experience inclement weather without adequate clothing. See e.g., Gordon v. Faber, 973 F.2d 686 (8th Cir. 1992) (affirming Eighth Amendment violation where prison official forced inmates outside in sub-freezing temperatures and refused to provide hats and gloves); Knop v. Johnson, 977 F.2d 996 (6th Cir. 1992) (affirming district court's order requiring prison to provide inmates with coats, hats, gloves, and, under specified circumstances, boots during winter). In Faber, the prison official forced

the segregation inmates outside to exercise–despite their request to stay indoors–for an hour to an hour and forty-five minutes while guards searched for a weapon in the cellhouse. 973 F.2d at 687. The official refused to supply readily available hats and gloves, and inmates were not allowed to see a nurse until several hours after the incident, despite their complaints of frostbite. See id. In Knop, the district court found that the jackets provided to the inmates–either lightweight unlined or medium-weight lined–were insufficient to protect inmates from Michigan winters and ordered the prison to provide "constitutionally adequate winter coats, hats, gloves, and, under specified circumstances, boots." See Knop v. Johnson, 667 F. Supp. 467, 475-77 (W.D. Mich. 1987).

Exposure to inclement weather without proper clothing can meet the objective prong of an Eighth Amendment violation, but based on Mr. Skelton's limited exposure to adverse conditions, there could be no such violation here. See DeSpain, 264 F.3d at 974 ("[T]he length of exposure to the conditions is often of prime importance."). The previously cited cases are distinguishable. Unlike the inmates in Faber, Mr. Skelton was never forced to go outside. He was always informed of the outside conditions and always had the option to stay indoors. On two occasions–totaling 20 and 30 minutes–he was not allowed to return inside despite his requests. In addition, unlike the inmates in Knop, he was provided a wool-lined denim coat. "Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment."

Whitington v. Ortiz, No. 07-1425, 2009 WL 74471, at *6 (10th Cir. Jan. 13, 2009) (unpublished) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Given the temporary nature of Mr. Skelton's exposure to inclement weather, a rational jury could not find that he faced a "substantial risk of serious harm to [his] health or safety." See DeSpain, 264 F.3d at 973 (quotation marks and citation omitted).

Mr. Skelton also claims that HCF violated a 1996 civil order requiring prison facilities in Kansas to provide a cover in their segregation exercise yards and to provide gloves, coats, hooded sweatshirts, and hats to inmates during winter months. See Porter v. Graves, Case No. 77-3045-RDR (D. Kan. 1996); 3 R., Doc. 139-2 at 5, 6. The district court rejected that argument, finding that it was unclear whether the order applied to HCF, and even if it did, the order was no longer in effect, as the case was closed on October 22, 1996. 3 R., Doc. 140 at 15. In addition, the court noted that Mr. Skelton cannot prove an Eighth Amendment violation merely by pointing to non-compliance with a court order.

Although the Porter case was closed on October 22, 1996, the final order expressly stated that "neither party is estopped from raising the application of the Prison Litigation Reform Act and the parties may by motion seek any relief provided for by the Prison Litigation Reform Act." 3 R., Doc. 139-3 at 2. Even if the order still applies, we agree with the district court that non-compliance with an order does not, on its face, violate the Eighth Amendment. 3 R., Doc. 140 at 16. As discussed above, we conclude that there was no Eighth Amendment

violation based on the conditions in the exercise yard.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge